H. C. WARREN, Appellant, *v.* WILLIAM M. DE
LONG and MABEL DE LONG, his wife, and
JEWELL DE LONG and BILL DE LONG, JR.,
Respondents.

No. 3150

July 31, 1936. 59 P. (2d) 1165.

*J. W. Dignan,* for Appellant:

134

*Salter & Robins,* for Respondents:

## O P I N I O N.

By the Court, COLEMAN, J.:

This action was commenced to recover judgment against William M. De Long and Mabel De Long, his wife, upon certain promissory notes, and to foreclose a certain real and chattel mortgage executed June 1, 1927, to secure the same. Bill De Long and Jewell De Long, children of the above-named defendants, were made party defendants. Judgment was rendered against William and Mabel De Long in the amount of the unpaid balance upon the notes, plus certain sums paid out by plaintiff for taxes and attorney fees, and a foreclosure of the mortgage was decreed. Judgment was rendered in favor of the other defendants.

We will refer to William M. De Long and wife as "defendants," and to the other defendants as "children."

Plaintiff has appealed from the judgment on the merits in favor of the children, and the children have appealed from an order made after judgment, retaxing costs.

All of the defendants admit the execution of the notes and mortgage in question, and that plaintiff was the owner and holder thereof at the time the action was brought.

The mortgage covers "about four hundred head" of cattle and their increase, and ranching implements upon the ranches covered by the mortgage, owned by the defendants William De Long and wife.

The real controversy on this appeal is as to the ownership of about 315 head of cattle bearing a JHG monogram brand, which the children claim to own, and which were run during the life of the mortgage upon the ranches in question and the range adjacent thereto, and

other personal property. In this connection, the complaint alleges, in substance, that subsequent to the delivery of the notes and mortgage the defendants and the children did fraudulently and collusively enter into a conspiracy to cheat and defraud the mortgagee and to deprive him of a portion of the property covered by the mortgage.

About the year 1903 the defendant William M. De Long and his brother, Alta L. De. Long, purchased the Happy Creek ranch of one J. H. Griffin, together with the cattle and the JHG brand, which brand was used by them for a time and until all of the cattle bearing that brand were sold, after which that brand was not used by them. In the year 1905 William M. De Long and Mabel De Long intermarried, of which union a son, Floyd De Long (now deceased), was born in 1906. At this time Alta De Long and William M. De Long dissolved partnership. At the time of the birth of Floyd De Long the defendants had adopted and were using the OYL monogram brand, which they continued to use to the time of the institution of this suit. Upon the birth of Floyd De Long the defendants gave him one heifer calf, which was branded JHG. Between the years 1905 and 1917, inclusive, there was born to the defendants seven sons and a daughter. On February 2, 1916, William M. De Long caused to be recorded in the office of the recorder of Humboldt County, in which is situated all of the property in question, the JHG monogram brand, in the name of "Wm. De Long's boys," to be used on horses right shoulder and on right shoulder of cattle. Upon the birth of each of said children to the defendants he was given one heifer calf. In addition thereto, from twenty to twenty-four calves were given to said children by different persons, including two grandmothers. The JHG brand was again recorded in the office of the recorder of Humboldt County in the year 1920. In 1923 the same brand was recorded in the office of the state board of stock commissioners, with following earmarks: A square crop in right ear and underslope in left ear,

with wattle on left side of neck and dulap on brisket. The said brand was rerecorded in said last-named office in 1926, in 1930, and in 1935. All of said records having been made by William De Long in the name of "Wm. De Long's boys."

We will not consider the errors assigned in the order of assignment. The first alleged error we will dispose of relates to the ruling of the court in holding that the JHG brand was legally recorded and lawfully employed and used by the children. In this connection plaintiff calls attention to sections 3790 and 3795 N. C. L. which relate to the recording of brands with the state board of stock commissioners.

Section 3790 reads: "Every owner of horses, mules, asses, cattle or hogs in this state may design and adopt a brand or brands, or brand and mark, or brands and marks, with which to brand or brand and mark his or her or its horses, mules, asses, cattle or hogs; *provided,* that it shall be unlawful for any owner of such animals to brand or brand and mark, or cause to be branded or branded and marked, his or her or its horses, mules, asses, cattle or hogs with a brand or brand and mark not at the time of legal record as hereinafter provided."

Section 3795 reads: "Hereafter, and excepting the rerecording, as provided for in this act, of brands or marks of horses, mules, asses, cattle, and hogs, of legal record at the time of passage of this act, every owner of horses, mules, asses, cattle or hogs in this state, desiring to adopt and use thereupon any brand, or brand and mark, or marks, as provided for in this act, shall, before doing so, forward to the board an application for the recording of such brand or brand and mark or marks and receive his or her certificate of recordation as provided herein. Said application shall include a drawing, exact except as to size, of the brand, together with any ear or other marks desired or intended to be used therewith, and the location upon the animal or animals concerned where such brand and ear or other marks are

desired or intended to be used, as well as a statement of the kinds of livestock upon which said brand or brand and mark or marks is or are to be used, the approximate boundaries of that part of the state within which it is intended to use the same, and the full name and address of the applicant. For the purpose of this act, the post-office address included in the application shall be considered the legal address of the applicant until the board shall receive from such applicant, in writing, a notice of change of the same, the latest address of record with the board remaining the legal address."

The sections quoted were enacted in 1923 (Stats. 1923, p. 25, c. 26), but for many years prior thereto there was a statute pertaining to the branding of livestock (Stats. 1873, p. 99, c. 39, Rev. Laws, sec. 2233 et seq.).

In support of the contention made, it is said in plaintiff's opening brief: "Upon the original pretended recording of this alleged JHG monogram brand, there was recorded therewith no mark or marks whatsoever, and the record failed to show that any natural person, corporation or legal partnership claimed to be the owner thereof."

In February 1916, when the original record was made, the statute read: "Owners of horses, mules, cattle, sheep, goats, or hogs, running at large, must have a mark or brand, and counter brand, different from any one in use by any other person, so far as may be known." Rev. Laws, sec. 2233.

This section required that owners of livestock *"must have* a mark or brand, and counter brand." It was optional whether an owner would have a mark or a brand. The word "or" clearly indicates that it was not necessary that he have both.

The law of 1923, section 3790 N. C. L., above quoted, provides that every owner of livestock *"may* design and adopt a brand *or* brands, *or* brand and mark or brands and marks." It is not even mandatory that an owner adopt and record anything which may be used as a

means of identification of livestock, but if he elects to do so he may adopt (1) "a brand or brands," or (2) "brand and mark," or (3) "brands and marks."

From a careful reading of the two acts it appears that it was not necessary that the children adopt and record a mark or marks, in addition to a brand.

It is not clear just what point plaintiff seeks to make because the original filing contained no marks. When the 1923 act was adopted a filing was made with the state board, adding to the brand the marks. It is not contended that this cannot be done.

As to the other point, that is, that "the record failed to show that any natural person, corporation or legal partnership claimed to be the owner thereof," we assume that it is meant that "Wm. De Long's boys" are not natural persons.

■ We are of the opinion that the legislature, in enacting the statutes relative to the branding and marking of livestock, had in mind merely to provide a method whereby an animal may carry with him prima-facie proof of ownership (3799 N. C. L.), thereby aiding in the identification by an owner of his property, and the establishment of ownership.

■■ We are of the opinion that the children are natural persons. We think it is not uncommon for owners of cattle to do business in a firm name and to have a brand in such name. That appeared from the opinion in State v. Cardelli, 19 Nev. 319, 10 P. 433, to have been the fact. In this connection we may say that the contention that the fact that the brand of the children was recorded by their father is a reason why it should not be considered, is not tenable. We are of the opinion that the provision in the statute that the "owner" of livestock may record a brand or mark does not mean that the owner must see to the recording in person. The provision is in this respect merely directory. If it were necessary that the "owner" personally supervise the recording, instances might arise in which the owner would lose his right, as, for instance, in cases

of prolonged illness, insanity, and the like. The section should not be given a narrow, technical interpretation which might defeat its purpose, but one which will effectuate its purpose, and at the same time injure no one. The plaintiff made the children defendants and brought them into court; and while the individual names were not given, in the record, that is certain which is capable of being made certain. Ellison Ranching Co. v. Bartlett, 53 Nev. 420, 3 P. (2d) 151.

■ It is said in plaintiff's opening brief that the children allege affirmatively that they were the owners, jointly with their brothers, of the property in question, and were permitted to make proof that the brothers and sister were joint owners thereof, without first having amended their answer. If an error was committed, as contended, it was harmless, as plaintiff's case was not affected thereby. •

■ It is strenuously urged that the trial court erred in finding that the minor children could lawfully accumulate property during their minority as the result of labor and services rendered while living with their parents. Many authorities are cited in support of the general rule of law on the point made. We agree with the general rule of law as contended for, and recognized it in Goldsworthy v. Johnson, 45 Nev. 355, 204 P. 505, where we also pointed out that a parent might emancipate his child. The trial court recognized the rule invoked, but held that under the facts it had no application in this case. We are of the opinion that there is sufficient evidence in the record to sustain the findings on this point. The evidence is undisputed as to the gift to each of the children, upon birth, of one or more heifer calves. That infants may accept and own property given them, free of the claim of their parents, is too well established to need the citation of authority to sustain the statement. 13 C. J. 1013.

■ That the parents emancipated the children so far as the cattle in question are concerned, is clearly established by the filing for record by the father of the brand, .

in 1916, and the continued acknowledgment of such emancipation, long prior to the giving of the mortgage in question.

At point IV of appellant's brief it is said that it is admitted that the JHG brand was not legally recorded. We find nothing in the record substantiating this statement. In fact, everything indicates the resistance of this contention. From what we have already said, we think it was legally recorded.

■ We do not think the court erred in permitting evidence to be introduced to show who were meant by "Wm. De Long's boys." So far as the plaintiff is concerned, it did not matter whether there were three or thirty claiming under that brand.

■ It is also contended that the recorded brand was improperly admitted in evidence because the record states that the cattle should be branded on a particular portion of the animal; whereas, some of the cattle are branded on the opposite side of the animal from that called for in the record. The plaintiff was not prejudiced by the ruling of the court, under the facts of the case. The Texas court, in disposing of the same question in Harwell v. State, 22 Tex. App. 251, 2 S. W. 606, 608, said: "Again, the jury are told that, if the yearling was branded on the side, instead of on the left hip, they could not consider the record of the brand in determining the ownership of the animal. This we think was error, but it was favorable to the defendant. While the record of the brand, under this state of the case, was not sufficient to prove ownership, still it was evidence tending to do so, and was entitled to consideration by the jury in connection with other (if any) evidence of ownership." The above rule was approved in Massey v. State, 31 Tex. Cr. R. 91, 19 S. W. 908.

We think this court has approved the same idea. In State v. Cardelli, 19 Nev. 319, 10 P. 433, 439, the court said: "The testimony was clear and positive that Carlin had for years prior to the sale of his cattle to Vail Bros., used the marks and brands in question. If it

should be conceded that, under the provisions of section 9, it was unlawful for Carlin or the Vail Bros. to use these marks and brands without having them recorded, still the fact remains that they did use them; and there is no provision in the statute which prohibits them, in a case like this, from identifying their cattle by such marks and brands, and having such identity considered as testimony tending to prove their ownership." See, also, Brooke v. People, 23 Colo. 375, 48 P. 502; State v. Henderson, 72 Or. 201, 143 P. 627; 1 Ency. Ev. 889.

■ It is also contended that the children forfeited all right they had to the cattle claimed by them, because they were not branded and marked exactly as contemplated by section 2239 Rev. Laws of 1912. The section mentioned is section 7 of the act of 1873. We think the act of 1873 was expressly repealed by the act of 1923, being section 3806 N. C. L. But if not expressly repealed, it was repealed by implication by the act of 1923 (sections 3790–3807 N. C. L.), which revises the whole subject matter of the act of 1873. Thorpe v. Schooling, 7 Nev. 15; State ex rel. Flack v. Rogers, 10 Nev. 319; 59 C. J. 921.

Having disposed of all of the legal questions raised, there remains but the question of whether the evidence is sufficient to sustain the judgment and order appealed from.

■ We do not feel that it is necessary.to review the evidence at length. It is clear that the recording of the brands and marks in behalf of the children was not with the intention to defraud this plaintiff. The first record was in 1916, eleven years prior to the giving of the mortgage in question. The amending thereof so as to add marks. was several years before the mortgage was given, and the rerecording was but a natural consequence of the former recording.

Senator Phil Tobin testified that he had been familiar with the range on which the cattle ran since 1923; that in 1924 he rode the range after his own cattle and as appraiser, for the First National Bank, of the Lay

cattle; that it was common knowledge that the JHG cattle belonged to "Bill De Long's boys." Several other witnesses testified along the same lines, besides members of the De Long family.

There is testimony on the part of the De Long boys—by themselves and others—that they used care not to brand calves following cows with the OYL brand, though it appears that at least one calf was improperly branded JHG. There is testimony also that a calf belonging to the children was branded OYL. There is testimony by one of the plaintiff's main witnesses (and others) that he has made such a mistake.

The supreme court of Wyoming had substantially the same question before it as is involved in the instant case, so far as the gift of livestock to minor children, and its offspring, is concerned, in the case of Kreigh et al. v. Cagswell et al., 45 Wyo. 531, 21 P.(2d) 831. After reviewing both the Roman civil law and the common law at length, the court reached the conclusion that livestock given to minor children while living with the parents, and its offspring, remained the property of the children. This is an interesting case, and, while not necessary to a determination of the case before us, because of the emancipation of the children, we call attention to it because of the interesting and exhaustive consideration of the general question.

In this connection we cite Rowan v. U. S. Fidelity & Guaranty Co., 105 Wash. 432, 178 P. 473.

 While the conditions under which the cattle in question were run and the other personal property was dealt with were such as might have enabled fraud to have been perpetrated with ease, and courts should closely scrutinize the evidence in such situations, as no doubt the court did in the instant case, in view of the fact that fraud is never presumed, and must be clearly and satisfactorily shown (Nevada M. & E. Co. v. Rae, 47 Nev. 173, 218 P. 89, 223 P. 825), we cannot say that the trial court reached an erroneous conclusion. Evans v. Sparks, 170 Cal. 532, 150 P. 372; Gilmore v. Swisher,

59 Kan. 172, 52 P. 426; Mueller v. Renkes, 31 Mont. 100, 77 P. 512. This conclusion as to the livestock is, to some degree, fortified by reason of the fact that plaintiff reported to the assessor of Humboldt County, for tax purposes, the cattle claimed under his mortgage, to be greatly less than actually rounded up, as the property of defendants, shortly before this suit was brought.

We have made no allusion to the evidence concerning the 'farming implements. To undertake to deal with each specific article would unduly lengthen this opinion.

Plaintiff attacks strenuously the finding of the court as to one Fordson tractor. It was owned and used by Floyd De Long in Elko County, and was never in Humboldt County until several years after the execution of the mortgage, when, according to the positive evidence, he gave it to the children. There was ample evidence to enable the court to reach the conclusion it did as to this property, and we cannot say that it erred.

It is also contended that William De Long sold hay, which was grown on the ranch, to the children, with which to feed their cattle; hence plaintiff should have a claim upon them for its value. If plaintiff has any such claim, it is evidently an afterthought, as no issue is made of it in the pleadings; hence we cannot pass upon it.

Upon the entire record, we are of the opinion that the judgment and order appealed from should be affirmed.

We will now consider the appeal of the children from the order retaxing costs.

The children put in claims for witness fees and mileage for witnesses who resided at a distance from the place of trial, but who were not subpenaed to appear, but who, being in the courtroom during the trial, were called to testify. The court disallowed the claim for such witnesses, except for the day called to the witness stand. We see no error in this ruling.

Section 8490 N. C. L. provides that: "Witnesses required to attend in the courts of this State shall receive the following compensation."

Section 8982 provides that a person present in court may be required to testify in the same manner as if he were in attendance upon a subpena.

Counsel for the children have filed a very exhaustive brief on this question, reviewing the statutes from the earliest day down to the present laws, and contend that the condition which prevailed before automobiles and good roads came into prominence presented a different situation than now. This is true, but if the legislature thinks these changed conditions justify a change in the law, it is up to it to say so.

The law as it exists was interpreted in Meagher v. Van Zandt, 18 Nev. 230, 2 P. 57, and Zelavin v. Tonopah Belmont Dev. Co., 39 Nev. 1, 149 P. 188, to mean that where a witness who was not *required* to appear in court by the service of subpena could claim a fee for the day he was on the witness stand, only, and no mileage. We think those decisions are in keeping with the letter and spirit of the law, and it follows that the order appealed from must be affirmed.

It is also ordered that the order and judgment appealed from by plaintiff be affirmed.

## ON PETITION FOR REHEARING

September 14, 1936. 60 P. (2d) 608.

*J. W. Dignan,* for Appellant.

*Salter & Robins,* for Respondents.

**OPINION**

By the Court, COLEMAN, J.:

Appellant has filed a petition for a rehearing. One of the statements in the opinion of which complaint is made reads: "The real controversy on this appeal is as to the ownership of about 315 head of cattle bearing a JHG monogram brand, which the children claim to own. * * *"

Counsel seeks to make a great point of this. In his petition he says:

"But the evidence is clear, positive and uncontradicted, that the number of cattle claimed by the De Long children is 241 head. But, notwithstanding this evidence, the trial court found that there were 300 head of cattle, and this court places the number at 315.

"Of course, the statement, by way of a recital in the

opinion, that there are 315 head of cattle in dispute, could not be very material were it not for the fact that the judgment itself is so grossly erroneous upon this very vital point in the case. This recital, however, becomes very material indeed when this court's attention is called to the fact that the evidence discloses, without contradiction, that there were in fact but 241 head of cattle bearing the JHG brand, and that the trial court gave to the defendants, Bill De Long, Jr., and Jewell De Long, along with three brothers named and a sister, a judgment against the plaintiff, commanding the forthwith delivery to said persons of 300 head of cattle, thus giving judgment against the plaintiff for 59 head more cattle than the evidence clearly showed were in controversy."

By the language complained of we referred to the number of cattle in *controversy,* merely. The fact is that the plaintiff's complaint, which is sworn to by the plaintiff and signed by counsel, avers, at line five, page 11 of volume 2 of the record, that the number of cattle "which the said defendants by means of a fraudulent conspiracy between themselves have sought to and are now seeking to claim to be the property of the said defendants" are 350 head of mixed cattle. The answer of the children avers that they "now are the owners of, and entitled to the possession of about 300 head of cattle * * * in the vicinity of Happy Creek and range adjacent thereto * * * and about 14 head of cattle located at Bottle Creek ranch branded JHG," 314 in all.

The trial court in its formal findings held that the children were entitled to "about 300 head of cattle * * * which said cattle range in the vicinity of Happy Creek and range adjacent thereto * * * *and* about 14 head of cattle located at Bottle Creek ranch, * * * " total 314.

■ We fail to see wherein plaintiff was injured by our innocent statement as to the number of cattle in *controversy.*

We think, too, the evidence sufficient to justify us in

not reversing the findings as to the number of cattle awarded respondents.

Counsel complains bitterly of the following language in the opinion: "So far as the plaintiff is concerned it did not matter whether there were three or thirty claiming under that brand."

■ In this connection counsel says "plaintiff never had a day in court with any of these named parties except the named defendants Bill De Long, Jr., and Jewell De Long." In the verified answer filed by Bill De Long, Jr., and Jewell De Long it is stated that other children jointly with them had in their possession and owned a large number of cattle branded JHG. Plaintiff knew long before the trial of the claim of ownership of all the children. He could have asked that they be formally made parties. He did not do so, and now, for the first time, complains that he has not had his day in court. He was not surprised during the trial and we do not see that he has been injured. The judgment should not be reversed for a nonprejudicial technicality, if there be such, of which plaintiff knew and bided his time to urge.

Counsel complains grievously because of the following statement in our former opinion: "This conclusion as to the livestock is, to some degree, fortified by reason of the fact that plaintiff reported to the assessor of Humboldt County, for tax purposes, the cattle claimed under his mortgage, to be greatly less than actually rounded up, as the property of defendants, shortly before this suit was brought."

■ We confess that the statement is inaccurate. Testimony was offered on the trial as to the number of cattle assessed to Wm. De Long, Sr., during the years 1930, 1931, 1932, 1933, and 1934. Counsel for defendant objected to this offer, but finally stipulated as follows: "I will save time by stipulating the record will show that 178 head of cattle were assessed to William De Long, Sr." He further stipulated that the plaintiff

paid taxes on that number of cattle for the years mentioned. This correction does not entitle plaintiff to any favorable consideration in the matter.

Counsel also takes umbrage at our ruling as to the claim for hay sold by Wm. De Long, Sr. He says: "From first to last the court, in its opinion, treats this controversy as an action at law for the recovery of the possession of certain personal property. This view of the case at bar is so plainly erroneous that a brief statement of the situation as disclosed by the pleadings will demonstrate its fallacy."

■ The fact is that we disposed of the questions raised, as we understood them, and we think that we decided in accordance with legal principles. As we held, there was no allegation in the complaint even intimating such an issue, hence we could not say that the trial court erred in its ruling. Judgments are reversed for the correction of errors only. Truckee River G. E. Co. v. Durham, 38 Nev. 311, 149 P. 61; Water Co. of Tonopah v. Belmont Dev. Co., 50 Nev. 24, 249 P. 565; Kindel v. Beck & Pauli Lith. Co., 19 Colo. 310, 35 P. 538, 24 L. R. A. 311.

We adhere to our former ruling.

■ Relative to the branding on the wrong side of the cattle, we may say that under all of the evidence in the case plaintiff was not misled nor injured. Plaintiff's theory is that the defendants conspired to defraud the plaintiff. Senator Tobin and others testified that it was commonly known that the JHG cattle belonged to respondents. Plaintiff's chief reliance, in an attempt to show a conspiracy to defraud, is based upon the fact that the conditions were such as to be conducive to the perpetration of fraud. This is not enough. Fraud must be proven; it is never presumed.

From a consideration of the entire record, we cannot say that the trial court reached a wrong conclusion.

The petition for a rehearing is denied.