LOUIS CANEPA AND EVA CANEPA, His Wife, AND
WILLIAM CANEPA AND ESTHER CANEPA,
His Wife, Appellants, v. F. E. DURHAM, Some-
times Known as FRANK DURHAM, AND CORA
E. DURHAM, Respondents.

No. 3411

December 4, 1944.                    153 P. (2d) 899.

*Withers & Edwards,* of Reno, for Appellants.

*Clel Georgetta* and *Clyde D. Souter,* both of Reno, for Respondent.

## OPINION

By the Court, ORR, C. J.:

Respondents, Frank E. Durham and Cora Durham, in the spring of 1936 entered into an agreement to sell to appellants, Louis and Eva Canepa and William and Esther Canepa, certain real property, consisting of approximately 382 acres, situate about nine miles west of Reno, on the Verdi Highway. Contemporaneously with said agreement, the Durhams executed and delivered to the Canepas a deed conveying said land and water rights. At the time of the sale the Federal Land Bank of Berkeley, California, held trust deeds on the property as security for an indebtedness in the sum of $17,019.31; also, at the same time, the respondents were

indebted to the United States of America through one of its crop loan agencies for money borrowed to purchase seed, which was secured by a chattel mortgage on certain hay located in a barn situate on said ranch. The agreement provided that the Durhams reserve about twelve acres, which the Canepas agreed 'to have released from the trust deeds hereinbefore referred to. The partial release was to be obtained by the appellants and delivered to the respondents on or before the 1st day of January 1940, provided that in the meantime respondents had saved the appellants harmless from the chattel crop mortgage. Said agreement further provided that appellants pay interest and payments as provided in the trust deeds to the Federal Land Bank of Berkeley, California. Respondents agreed to pay general taxes assessed against the twelve acres after January 1, 1936, and to pay their portion of ditch maintenance and also Coldron ditch assessments for water right reserved to said twelve acres. Appellants executed and delivered to respondents as part of the consideration two notes, one in the sum of $250, payable on or before November 1, 1936, and one in the sum of $225, payable on or before November 1, 1937. It was orally agreed between the parties that the hay located upon the ranch property and covered by the chattel mortgage was to be left in the barn for a reasonable period of time. The hay remained in the barn from April 9, 1937, to March 10, 1939, a period of twenty-three months. Appellants failed to pay the principal or interest on the two notes above mentioned and failed to secure from the Federal Land Bank of Berkeley, California, a release from the two deeds of trust of the portion of the ranch reserved by respondents. Respondents, in the year 1939 and before the expiration of the time fixed in said agreement to secure the release of the twelve acres, sold said twelve acres to one Belz. Appellants have made the payments required to be made to the Federal Land Bank of Berkeley, California, under said trust deeds,

each year, and the amount paid by them, together with two checks given by the highway department of the State of Nevada to said bank for certain rights of way, is the sum of $11,709.57. The actual amount paid by the Canepas is $9,092.37; this includes $2,100 paid at the time of the consummation of the deal. The indebtedness to said bank has been reduced from $17,019.31 to $8,558.15. Because of the failure of appellants to obtain the partial release and to pay the notes when due, respondents, on the 23d day of January 1942 addressed the following letter to the appellants:

"Verdi, Nevada
Jan. 23rd, 1942

Louis Canepa and William Canepa,
Verdi Highway
Washoe County, Nevada.
Gentlemen:

You entered into a concract with us on April 9, 1936, and agreed to secure a partial release from the mortgage held by the Federal Land Bank of Berkeley, California, on about twelve (12) acres of land which we reserved from the sale of our ranch to you.

You agreed to obtain the release and deliver it to us on or before January 1, 1940.

This you have failed to do now for a period of two years. We think this is more than a liberal time, and therefore we notify you that unless within sixty days you complete your contract by delivering it to us, we shall consider that you have abandoned your contract and take action against you.

Very truly yours,
Frank E. Durham
Cora E. Durham"

Under the date of January 31, 1942, the appellants answered as follows:

"January 31, 1942

Frank E. Durham, and Cora E. Durham, Verdi, Nevada.
Dear Mr. and Mrs. Durham:

We acknowledge receipt of your letter of January 23rd

in which you demand partial release of some twelve acres of land pursuant to agreement signed between us on the 8th day of April, 1936, stating that unless this release is furnished you, you will consider that we have abandoned our contract and will take action against us.

May we call your attention to the wording of the agreement referred to, as follows: 'Said partial release to be obtained and delivered to the parties of the first part on or before January 1st, 1940, *providing in the meantime parties of the first part have saved the parties of the second part harmless from chattel crop mortgage dated April 2nd, 1935, filed under No. 304, in the file of Chattel mortgages, records of Washoe County, Nevada.'*

You will recall that the government filed a suit against you and against us for the foreclosure of this mortgage, as a result of which we were put to considerable costs and expense in the way of attorney fees. It is our contention that you have not saved us harmless from the crop mortgage and until such time as you do, you are not entitled to your release.

Further more, we are being billed for delinquent water assessment charges as follows:

Part right No. 94 in Coldron Ditch,
1934 assessment, delinquent                              $18.36
Part right No. 94 in Coldron Ditch,
1935 assessment, 2nd, delinquent                          6.20
Part right No. 94 in Coldron Ditch,
1935 assessment, 1st, delinquent                         12.40

These charges were due and payable by you prior to the time that we entered into our agreement with you, and should be paid by you.

It is unfortunate that in our dealings with you we have had so many arguments and disagreements. We realize that legal action will result in both of us incurring heavy expenses and that, in the long run, we will both suffer by such action. We therefore submit to you the following offer to compromise all disputes between us:

1. That we apply for, and give our consent to, the release demanded by you.

2. That you pay us the water assessments mentioned.
3. That we give you, and you in turn give us, a release wherein each of us releases the other from any and all claims of every nature whatsoever.
4. That you make application to the Federal Land Bank of Berkeley, requesting that you and Mrs. Durham be relieved from liability on both Land Bank and the Land Bank Commissioner loans Nos. 22449 and A3983.

We will be glad to proceed along these lines at any time. We do not feel, however, that we should be called upon to give you this release until all possible arguments between us have been straightened out and adjusted for all time.

Very truly yours,

L. Canepa<br>W. Canepa"

Thereafter respondents, on the 4th day of March 1942, again addressed a letter to appellants, reading as follows:

"Louis Canepa and William Canepa, Verdi Highway, Washoe County, Nevada.

Gentlemen:

This will acknowledge your letter of January 31, 1942.

You base your failure to comply with your contract with me and Mrs. Durham upon the fact that you state that you expended counsel fees in connection with the action which the United States Government instituted against me, and to which you were made a party because you testified you had purchased a part of the hay covered by the Federal Chattel Mortgage from me, but admitted that you had never paid for it. Had you paid for the hay, which you yourself stated under oath you had received from me, you would never have been involved in that action.

As a matter of fact, both you and we know that the hay was never sold to you by us, but that you took it out of the barn without any authority, after having

it fully explained to you, before the ranch was sold to you, that the hay was covered by a Federal Chattel Mortgage, and that it was not a part of what you bought.

Any counsel fees that you expended, or anything else you have paid in that connection, was because of your own transgression, and in my opinion it is no excuse whatever for your failure to carry out your contract.

I wish to repeat to you that unless within the time fixed by my first letter, of January 23, 1942, you comply with your contract, I shall consider that you have abandoned it.

Yours truly,

Frank E. Durham
Cora E. Durham"

On August 7, 1942, respondents instituted an action in the district court asking a rescission of the contract and a cancellation of the deed.

■ Appellants have based much of their argument as presented to this court on the proposition that respondents failed to show any breach of a condition precedent or subsequent, and respondents reply that such argument has no application here because they are seeking an equitable rescission and not a judgment declaring a forfeiture for breach of any of the conditions of the contract. Respondents further assert that they rely on no term in the contract to justify the rescission, but on grounds which would make it inequitable for the contract to proceed to completion, that specific performance would be unjust, that they have no remedy at law, and that the damages to respondents cannot be estimated with any reasonable certainty. Insofar as the contentions of respondents relate to the nature of the action, we think their position is correct. Stennick v. J. K. Lumber Co., et al., 85 Or. 444, 161 P. 97; Boyes et al. v. Green Mountain Falls Town & Improvement Co., 3 Colo. App. 295, 33 P. 77; Gallanan v. Powers et al., 199 N. Y. 268, 92 N. E. 747.

The lower court, after trial, ordered the contract

rescinded and the deed cancelled, and, after taking evidence for that purpose, ordered an equitable accounting between the parties. On April 30, 1942, and prior to the commencement of this action, appellants applied to the Federal Farm Loan Bank for the partial release provided for in the agreement of April 9, 1936. On the 13th day of August, 1942, appellants were advised by the National Farm Loan Association that the release could not be cleared because it was not signed by said Frank E. and Cora E. Durham. The formal request signed by appellants was submitted to respondents for their signatures after the institution of this action.

The trial court, in ordering the rescission of the contract and cancellation of the deed, based its action primarily upon the failure of appellants to secure the release provided for in the agreement of April 9, 1936, holding this portion of the said agreement to be the most essential part of it; that without it the said agreement of sale would not have been entered into; that because of the failure of appellants to comply with this provision of the agreement respondents had been damaged; that it was impossible to determine the amount of damages suffered by respondents; that no remedy for specific performance existed; and to require appellants to respond in damages would not be adequate.

As to the provisions of the agreement of April 9, 1936, wherein respondents were to hold appellants harmless from the chattel mortgage on the hay, the trial court found that the failure of respondents to remove the hay from the barn was not sufficient to excuse appellants from securing release of the said twelve acres. Two more matters were in controversy: payment of water assessments, and removal of balances from the scales. And while the trial court found respondents at fault in these respects, it did not consider them of sufficient importance to justify noncompliance by appellants with the terms of the contract.

The decision of the trial court ordering the rescission and cancellation is based for the most part on Finding XXIX, which reads as follows: "In March, 1939, the Plaintiffs sold the twelve acres reserved from their ranch at the time of the contract and conveyance of the ranch by the Plaintiffs to the Defendants, Louis and William Canepa, with an assurance by the purchaser that said twelve acres would be released from the lien of the deeds of trust held by the Federal Land Bank of Berkeley, California, on or before January 1, 1940. The Plaintiffs were damaged by the failure of the Defendants to deliver said release on or before that date. They were harassed and damaged in a substantial degree. It was impossible at the time of the trial of this action, and would be impossible at any time, to arrive at the amount of damage thus sustained by the Plaintiffs."

■■■ If we could say, after a consideration of all the evidence in the case, that there is substantial evidence in the record to sustain the said finding, then under the rule often announced by this court we would be required to sustain the judgment. But after a careful consideration of the evidence we can reach no other conclusion than that Finding XXIX is without support as far as the evidence in this case is concerned. It will be noted that respondents disposed of the twelve acres of land prior to the time appellants were to secure and deliver the release from the Federal Land Bank. As far as appears from the evidence in this case they received the full value of the land, and they have been permitted to enjoy the benefits of the consideration paid, without interference from the purchaser thereof. And so far as appears from the evidence in this case there is no showing that the sale by the Durhams to Belz was in any way contingent upon appellants securing the release. The trial court attempts to say, in Finding XXIX, that respondents sold the twelve acres with the assurance that said twelve acres would be released from the lien

of the deeds of trust on or before January 1, 1940. There is no evidence in this record to support that finding. We might say here that counsel for respondents, at the trial, recognized the necessity of showing the circumstances and conditions of the sale from the Durhams to Belz, in order that damages or other equitable grounds might be established, if any exist, to justify a rescission of the contract, and on two different occasions and at the very first opportunity made determined efforts to introduce such testimony. Objections to its admission were sustained. In refusing respondents the opportunity to introduce such testimony we think the trial court deprived itself of a basis upon which to enter its order of rescission and cancellation, in the event such a basis could have been shown. We cannot see wherein an appeal to the conscience of the chancellor could be made by the Durhams if, as appears from this record, they had received what must be considered ample compensation for their land before the time for the obtaining of the release had elapsed, and were in no way embarrassed or harmed or damaged by reason of such failure. For all that appears from this record it may very well be that the purchaser, Belz, was perfectly satisfied to let the matter ride along until the entire amount of the trust deeds were paid by appellants and the entire property thus automatically released. Appellants were obligated under the provisions of the agreement of April 9, 1936, to secure the release, but as it subsequently developed, there was a corresponding duty on the part of respondents in this case to cooperate; hence, the situation was such that it required joint action, and the requirement in the agreement that the Canepas secure the release was impossible of performance without the cooperation of the Durhams. The law is not such as will permit respondents to sit idly by and invoke a rescission of a contract because of a breach of the provisions thereof, unless they perform that which is required of them. 12 Am. Jur. p.

1019, sec. 438, note 3. The payments that have been made by the Canepas have taken care of more than one half of the amount due on the twelve acres, as well as the rest of the ranch, and it is reasonable to believe that all provisions of the contract would eventually be performed, because the stake which the Canepas have in the deal is of such magnitude in comparison to that which remains they could not afford to permit the trust deeds to be foreclosed. Time not being of the essence and no damage being shown to the Durhams, they being presumed to have received the full value of the land and having in their possession a request for a release, signed by the Canepas, which can be forwarded to the Federal Land Bank, and, to our minds, no circumstances having intervened that would render it unjust and inequitable to the Durhams to receive the release at this time, we are not impressed with the alleged equities upon which respondents rely. It must be borne in mind while reviewing this case as a whole that appellants, after the receipt of the letter of March 4, 1942, quoted supra, and on April 30, 1942, made application to the Federal Land Bank for a release of the twelve acres of land, and the bank delayed answering until August 13, 1942. This delay cannot be charged to the Canepas.

■■ We recognize that the question of whether or not a rescission shall be granted rests largely in the sound discretion of the court (Mosso v. Lee, 53 Nev. 176 at page 177, 295 P. 776), but upon the whole record we feel the decision reached was not justified by the evidence in this case.

"A partial failure of performance of a contract will not give ground for its rescission unless it defeats the very object of the contract or renders that object impossible of attainment, or unless it concerns a matter of such prime importance that the contract would not have been made if default in that particular had been expected or contemplated." Black on Rescission and Cancellation, vol. I, par. 198, p. 512.

■ Neither of those conditions was shown to exist here.

"It is true that courts of equity do not encourage laches or slothfulness; but on the other hand, equity is not fond of taking advantage of forfeitures arising merely from a lapse of the time specified; on the contrary, it is the constant course to relieve against such forfeitures where adequate compensation can be made. Hence, for example, a vendor of land who has received a large part of the purchase money should not be permitted to rescind the contract and recover the land, if the purchaser is ready, able, and willing to pay the balance due, no matter how long he has been in default." Black on Rescission and Cancellation, vol. I, p. 575, n. 327.

"Nor in any case where the evidence shows that time has not been treated by the vendor as of the essence of the contract in respect to the defaults relied on for a forfeiture." Black on Rescission and Cancellation, vol. I, p. 576, n. 328.

We are aware that we are not dealing with a forfeiture in this case, but some of the reasons given why a forfeiture should not be declared apply with equal force against the granting of a rescission.

"In the United States the mere fact that a conveyance has been made does not prevent rescission and cancellation of the deed for failure of consideration. The courts, however, are reluctant to grant this relief even though there is a substantial or total breach of the return promise if any other compensatory relief is available." Williston on Contracts, vol. V, par. 1456, p. 4067, notes 2 and 3. See, also, 9 Am. Jur. 352, 270, 373.

■ "We are unable to understand why compensation for damages, if shown, would not be adequate. We have twelve acres of land with a fixed value which could be ascertained. The transfer of the land indicates it had no sentimental value to the Durhams, and when it is said that it is impossible to ascertain the damages

occasioned the Durhams, that impossibility, it seems to us, is because of the fact that none existed.

As to the collection of the amounts due on the notes, it seems plain that appropriate action brought for that purpose would suffice.

The judgment and order appealed from are reversed.

ON PETITION FOR REHEARING

January 29, 1945.          155 P. (2d) 1009.

*Withers & Edwards*, of Reno, for Appellants.

*Clel Georgetta* and *Clyde D. Souter*, both of Reno, for Respondents.

## OPINION

*Per Curiam:*

The petition for rehearing is denied.

At the time of the filing of the petition for rehearing, respondents requested that in the event the petition for rehearing was denied, this court remand the case to the lower court for further action and proceedings under authority of section 9385.78, N. C. L. Supplement 1931–1941. We think that, having rendered an opinion and decided the appeal, the request comes too late, and it is therefore denied.

Dated at Carson City, Nevada, this 29th day of January, A. D. 1945.

ON COSTS

February 6, 1945.          175 P. (2d) 788.

*Withers & Edwards,* of Reno, for Appellants.

*Clel Georgetta* and *Clyde D. Souter,* both of Reno, for Respondents.

## OPINION

By the Court, ORR, J.:

Subsequent to the rendition of an opinion by this court in the above-entitled case and on December 8, 1944, appellants filed with the clerk of this court a cost bill. On December 15, 1944, respondents filed objections thereto. On December 19, 1944, the clerk of this court overruled the objections made by respondents and taxed costs in favor of appellants in the sum claimed. Respondents have appealed from the ruling of the clerk.

Two grounds are urged in support of this appeal: (1) That this court did not award costs to appellants; (2) that rule VI of the rules of this court, subdivision 2, was not complied with.

In support of respondent's contention that at the time of rendering our opinion we did not award costs, it is argued that section 9385.80, vol. 2, 1931–1941 Supplement, Nevada Compiled Laws, had so modified section 8928, vol. 4, N. C. L., that unless there is a specific award of costs made in the decision, costs cannot be

collected. We do not think that the enactment of section 8385.80 in any way changed the effect of section 8928 and the construction which has been placed thereon by this court. The two sections are separate and distinct and deal with different subjects, the one with the allowance of costs, the other with the manner of collecting them.

■ This court has repeatedly held that where affirmative relief is given, even though no specific award of costs be made in the opinion, the party receiving such affirmative relief is entitled thereto. Dixon v. Southern Pacific Co., 42 Nev. 73, 90, 172 P. 368, 177 P. 14, 179 P. 382; Richards v. Vermilyea, 42 Nev. 294, 300, 175 P. 188, 180 P. 121; Page v. Walser, 47 Nev. 386, at page 394, 223 P. 1079; Sorge v. Sierra Auto Supply Co., 48 Nev. 60, 227 P. 320; Lee Tire & Rubber Co. v. McCarran et al., 57 Nev. 123, 59 P. 2d 649; Golden v. McKim, 45 Nev. 350, 204 P. 602; Siebert v. Smith, 49 Nev. 312, 244 P. 1012, 246 P. 1; Gerlach Livestock Co. v. Laxalt, 53 Nev. 259, 267, 298 P. 413, 2 P. 2d 123.

The rendition of an opinion by this court granting affirmative relief to a party carries with it an award of costs, and that award is just as definite and certain as it would be had the opinion contained a statement to that effect. In this case the opinion of this court gave appellants affirmative relief; by so doing, this court awarded costs to appellants.

■ In support of the second ground of objection, respondents assert that the affidavit attached to the memorandum of costs and disbursements is insufficient. The affidavit reads as follows: "T. L. Withers, being duly sworn, deposes and says: That he is one of the attorneys for the Appellants in the above entitled action, and as such is better informed relative to the above costs and disbursements than the said Appellants; that the items in the above memorandum contained are correct, to the best of this deponent's knowledge and belief, and that the said disbursements have been necessarily incurred and paid in said action."

The affidavit is almost identical with that held sufficient in the case of Sorge v. Sierra Auto Supply Co., 48 Nev. 60, 227 P. 320, which reads: "Walter M. Nold, being first duly sworn, deposes and says, that he is one of the attorneys, being associated with the firm of Price & Hawkins, attorneys for appellant in the above entitled·action, and as such, is well informed as to the above costs and disbursements; that the items in the above memorandum contained are correct, to the best of this deponent's knowledge and belief, and that said disbursements have been necessarily incurred in said action."

Also the affidavit held sufficient in the case of Siebert v. Smith, 49 Nev. 312, 244 P. 1012, 246 P. 1, which reads: "John D. Hoyt being duly sworn deposes and says: That he is attorney for the appellant in the above entitled action, and as such is better informed relative to the above costs and disbursements than the said appellant; that the items in the above memorandum contained are correct, to the best of this deponent's knowledge and belief and that the said disbursements have been necessarily incurred in said action."

The ruling of the clerk is sustained.

## ON FURTHER PETITION FOR REHEARING

February 19, 1945.                     155 P. (2d) 1009.

*Withers & Edwards,* of Reno, for Appellants.

*Clel Georgetta* and *Clyde D. Souter,* both of Reno, for Respondents.

## OPINION

*Per Curiam:*

Respondents have petitioned for a rehearing of that portion of the order filed by this court on January 29, 1945, in which this court denied respondents' request

and motion that the court remand the case to the lower court for further action and proceedings under authority of section 9385.78, N. C. L. Supplement, 1931–1941. Counsel for respondents consider the language used in denying the motion as placing them in the unenviable position of having failed, at a timely moment, to have made the request and motion. In justice to counsel, we wish to make it perfectly clear that such was not our intention. The decision of the court in denying the motion was based upon the fact that this court had made a decision under one of the alternatives contained in section 9385.78, N. C. L. Supplement, 1931–1941, namely, had reversed the decision of the lower court; and having made its order reversing the decision of the lower court and having denied a petition for rehearing, it was then too late for this court to make an order remanding the case for the taking of further testimony. That is what we intended to, and do now, hold. Anyone reviewing the record in this case certainly would not be justified in even intimating a lack of diligence on the part of counsel for respondents.

The petition is denied.