VICTOR HAVAS, DBA COURTESY MOTORS, APPEL-LANT, *v.* CHARLES L. ALGER, RESPONDENT.

No. 5608

VICTOR HAVAS, DBA COURTESY MOTORS, APPEL-LANT, *v.* GEORGE W. BERNHARD AND DELLA BERNHARD, HUSBAND AND WIFE, RESPONDENTS.

No. 5659

November 26, 1969                    461 P.2d 857

*Dorsey and Taylor,* of Las Vegas, for Appellant.

*Keith C. Hayes,* of Las Vegas, for Respondents.

## OPINION

By the Court, COLLINS, C. J.:

These appeals were ordered consolidated for argument and decision because they present common questions of law and fact.

### Case No. 5608

On June 4, 1961, respondent and his wife called at appellant's used car lot in Las Vegas, Nevada, to look for a small, used, foreign car for her use. They were shown three 1960 and one or more 1959 Prinz automobiles of German manufacture. The 1960 models sold for $995 each, while the 1959 models sold for $950. Mrs. Alger test drove each of the 1960 models and picked out one which suited her best. Mr. Havas provided a written form of conditional sales contract. He filled out certain, but not all, blanks in the contract form, asked Mr. Alger to sign it and initial certain areas on the face of the contract. All it then contained was the amount of the down payment and the date. Mr. Havas then kept the contract to have his secretary type it. The contract was never typed. Mr. Alger then paid $50 toward the down payment. The next day he returned to the lot, paid $300 more as a down payment, and drove the car home. He was never given a copy of the contract by Mr. Havas, who later assigned it to the Bank of Nevada.

During the negotiations, Algers were told by Havas that he had a parts house with everything needed to repair the automobile. This statement turned out to be false.

On the way home from the purchase, the automobile quit. Mr. Alger took it back immediately. Mr. Havas kept it two or three days, ostensibly repaired it, and returned it to the Algers.

When Mr. Alger sought to license the auto, he discovered it was a 1959, not a 1960, model and that the purchase price was $1,100, not $995. Mr. Alger suggested that a switch from a 1960 to 1959 model may have taken place when it was returned for repairs the day of the purchase. Shortly thereafter, Mr. Havas billed the Algers $25 for sales tax. Mr. Alger went to see Mr. Havas, complained that it was unusual to be billed

separately for the sales tax, and demanded a copy of the contract. Regarding the incident, Mr. Alger testified, "At the time I was pretty burned up and then, as you know, he's [Havas] a pretty slick talker and at the time he got through, well, he says, 'If that's all that is bothering you, I'll take care of that.' So he took care of this $25, or whatever it was, himself. With his slick talking, he smoothed me over and I left then." Mr. Alger never did get a copy of the contract. Mr. Havas told him not to tell anybody about the handling of the sales tax.[1]

Within 30 days the combination starter-generator broke down. Mr. Alger again returned it to Mr. Havas, who then informed him parts would have to be obtained from Germany and a $35 deposit would be required. Alger refused to pay this. Later, the carburetor broke down and Mr. Alger bought a used one for $25 from Mr. Havas, remodeled the parts and repaired the car himself. Respondent testified the auto didn't run more than 90 days the entire time they had it. The record also contains an unrefuted contention by Mr. Alger that Mr. Havas had signed Alger's name to a credit statement given to the bank incident to purchase of the automobile.

When Mr. Alger received his payment book from the bank he noted that it called for 30 payments instead of 24 which was his understanding. He called the bank and disputed the 30 payments, but when told by the bank that that number was shown on the contract, he said nothing more.

Thereafter, Alger made 14 payments on the automobile, but then stopped because, the automobile not being operable, he felt he was paying for a "dead horse." The car was repossessed and sold for $51. Havas sought to recover $476 deficiency.

The lower court denied Havas' claim on the grounds of fraudulent representation and failure of consideration, and awarded Alger his costs and an attorney's fee of $200. It is from that judgment this appeal is taken.

Appellant contends that the contract of the parties is evidenced by the written form signed by Mr. Alger on June 4, 1961, where the blank spaces were only partially completed or filled in. That printed contract contained a clause on the reverse side in small print excluding any warranties, express or implied, representations, promises or statements unless endorsed on the contract in writing. None were. Thus, appellant contends respondent purchased the automobile "as is", and nothing he may have said or done relating to the automobile binds him. Chiquita Mining Co., Ltd. v. Fairbanks, Morse

---

[1]The fact is the sales tax of $22 was added to the price of $1,100 on the contract form, making the total purchase price $1,122.

& Co., 60 Nev. 142, 104 P.2d 191 (1940). He relies upon Kennedy v. Schwartz, 13 Nev. 229 (1878); Tallman v. First Nat'l Bank of Nevada, 66 Nev. 248, 208 P.2d 302 (1949); and Natrona Power Co. v. Clark, 225 P. 586 (Wyo. 1924).

Respondent, on the other hand, affirmatively pleaded fraud and failure of consideration. The trial judge, who heard the case without a jury, found appellant guilty of fraud in representing the automobile to be a 1960 model when in fact it was a 1959 model and found a failure of consideration resulting from that and other representations.

Where the trial court sits as the trier of fact, we have said, "It is the prerogative of the trier of facts to evaluate the credibility of witnesses and determine the weight of their testimony, and it is not within the province of the appellate court to instruct the trier of fact that certain witnesses or testimony must be believed." Douglas Spencer and Associates v. Las Vegas Sun, Inc., 84 Nev. 279, 439 P.2d 473 (1968). And when there is substantial evidence to support the findings of the trial court, they will not be reversed on appeal. Ward v. Scheeline Banking & Trust Co., 54 Nev. 442, 451, 22 P.2d 358 (1933); Young Elec. Sign Co. v. Hotel Last Frontier Corp., 78 Nev. 457, 375 P.2d 859 (1962).

Fraud in the inducement renders the contract voidable. Bishop v. Stewart, 13 Nev. 25, 42 (1878); Friendly Irishman v. Ronnow, 74 Nev. 316, 330 P.2d 497 (1958); Lovato v. Catron, 148 P. 490 (N.M. 1915); C.I.T. Corp. v. Panac, 154 P.2d 710 (Cal. 1944). The person defrauded may rescind, Friendly Irishman v. Ronnow, supra; Kuchta v. Western Oldsmobile, 355 P.2d 458 (Ore. 1960); Daniel v. Lilenquist Motors, Inc., 332 P.2d 459 (Wash. 1959), or he may, if the contract is still executory, as the case here, refuse to perform and raise the defense of fraud when sued, Hollywood Credit Clothing Co. v. Gibson, 188 A.2d 348 (D.C. Ct.App. 1963); 3 Williston on Sales § 648. Whether rescision shall be granted rests largely in the sound discretion of the court. Canepa v. Durham, 62 Nev. 417, 153 P.2d 899 (1944).

Fraud is never presumed; it must be clearly and satisfactorily proved. Warren v. De Long, 57 Nev. 131, 146, 59 P.2d 1165 (1936); Ward v. Scheeline Banking and Trust Co., supra, 54 Nev. at 451; Nevada Mining and Exploration Co. v. Rae, 47 Nev. 173, 182, 218 P. 89 (1923).

The policy of this state with respect to contracts procurred through fraud has been made clear. "[T]he courts can never be called upon to legalize a fraud, or enable any man upon an executory contract to realize a profit from his own immoral conduct. The very moment the fraud is clearly proven the court refuses to grant any relief. . . . Whenever, in this manner, an executory contract is tainted with fraud, the court refuses to enforce it, and it makes no difference whether the fraud is shown by the plaintiff or defendant." McCausland v. Ralston, 12 Nev. 195, 216 (1877). The contract between Alger and Havas was executory—Havas was suing for breach of it in the failure to pay the consideration. In Nevada Mining and Exploration Co. v. Rae, supra, this Court said: "[W]e know that there are instances in which a written contract will be canceled because of fraud inhering in its execution. . . . A contract obtained by duress or from an incompetent or by some fraudulent practice in inducing its execution is, among others, an instance of fraud inhering in the obtaining of the contract." 47 Nev. at 193.

The cases relied upon by appellant do not require reversal of the judgment below. Respondent has discharged his burden of proof as required by Kennedy v. Schwartz, supra. Both Tallman v. First Nat'l Bank, supra, and Natrona Power Co. v. Clark, supra, state the well-established rule that absent fraud or mistake, no oral testimony may be admitted to contradict a written instrument. Here we have fraud alleged and proved to the satisfaction of the trial court upon sufficient evidence. In Friendly Irishman v. Ronnow, supra, the buyer was told that she was getting a new car. Instead, it was a "nearly new" car. Respondent there contended that a notation on the sales contract "NN" showed it was a "nearly new" car that had been contracted for and parol evidence could not be admitted to show the agreement was otherwise. This Court said: "That evidence demonstrated fraud in the procurement of the instrument and served to defeat the instrument and not to vary its terms. The parol evidence rule, then, does not apply." 74 Nev. at 318–19.

There is ample authority to support the lower court's judgment that Havas take nothing because he made fraudulent representations as to the year of the car. In Friendly Irishman v. Ronnow, supra, this Court said: "Under the conceded facts, then, it can hardly be questioned that defendant's representations to plaintiff that the car was new were made with knowledge that they were false, and with the intent to deceive

plaintiff. Such intentional misrepresentations of material facts in a contract resulting in the intended deception, constitutes actual fraud, which is a proper ground for rescission of the contract." 74 Nev. at 318. In Kuchta v. Western Oldsmobile, supra, the buyer bought what was represented to be a new 1957 model car, when in fact it was a used 1957 model. The court there said: "Fraud in inducement is a basis for an action for rescission of a contract. . . ." 355 P.2d at 460. In Daniel v. Lilenquist Motors, Inc., supra, the buyer agreed to buy a truck represented as being a 1948 model, when in fact it was a 1940 model. The misrepresentation was held to constitute fraud entitling the buyer to rescind.

Appellant, Havas, contends that the difference in price between a 1959 and a 1960 Prinz was only about $100, and this was not substantial enough to warrant barring his recovery. The cases hold that the buyer is entitled to rescind if he does not get what he bargained for because of the seller's fraud. Substantial compliance does not apply when the seller fraudulently represents he is giving 100 percent compliance with the agreement between them.

## Case No. 5659

On April 15, 1965, Della Bernhard, one of the respondents, called at the used car sales lot of appellant Victor Havas to inquire about purchasing a used automobile for her son, 17-year-old Michael, who was about to enter the U.S. Marine Corps. Mrs. Bernhard talked with Mr. Havas and told him of the intended use by her son who needed an automobile when he entered the service, "to get from one place to another, and get home if he was close enough." Mr. Havas showed her a 1958 used Triumph automobile, and told her the car was in good condition and that Mike could depend on it, and that if he took care of it he shouldn't have any trouble at all driving it for some time. Mrs. Bernhard testified that because Mr. Havas was "a local businessman of some time, we took his word that the car was in good condition."

The price of the vehicle was $1,295, of which Mrs. Bernhard paid $400 down. A conditional sales contract was signed by Mrs. Bernhard for herself and, through a power of attorney, for her husband who was working out of town. The time balance, after adding interest and other fees and deducting the down payment, was $1,344, payable in 42 monthly installments of $32 each.

The very next day following the purchase, Michael attempted

to drive the automobile to Lake Mead. On the way, it broke down and had to be towed back to appellant's used car lot. Appellant said he would repair it only if he were paid the cost of the needed parts and labor. Instead of permitting appellant to repair the car, it was taken to a Triumph mechanic who charged $380 and required six weeks to restore it to running condition. Meanwhile, Mr. Bernhard had installed two new tires on the vehicle.

After it was repaired, Michael drove it about two days when it developed a serious oil leak and problems with the steering mechanism. The car was returned to the Triumph mechanic, who repaired the steering. When informed of the additional cost to stop the oil leak, the Bernhards stored the automobile in their carport and Michael left for the service without the car.

The car remained in their carport until they changed homes. While it was being moved to the new home, the hood broke off and cracked the windshield. The hood hinges were found to have rusted through.

The Bernhards stored the car at their new home. They made installment payments until they had paid a total of $378 on the purchase price. They testified they did not want to jeopardize their credit rating. Finally, in March, 1965, they asked appellant to pick up the car, which he did. The car was sold for $130. By that time, they had paid $400 down, $380 to repair the auto, $378 in installment payments, and had installed two new tires on the vehicle. Appellant sued Bernhard for $672.20, the deficiency still owed on the contract. Michael was not a party to the action.

Respondents denied they owed appellant any money. They also raised the affirmative defense of failure of consideration.

The case was tried to the lower court without a jury, who found and concluded there was a total failure of consideration in the purchase of the automobile, denied appellant any relief and allowed respondents their costs and a fee for their attorney in the amount of $250. It is from that judgment this appeal is taken.

We believe that whether the failure of consideration was either partial or total, the lower court's judgment should be sustained. In Canepa v. Durham, 62 Nev. 417, 153 P.2d 899 (1944), this court said: " 'A partial failure of performance of a contract will not give ground for its rescission *unless it defeats the very object of the contract* or renders that object impossible of attainment, or *unless it concerns a matter of such prime importance that the contract would not have been made if*

*default in that particular had been expected or contemplated.'"* Id. at 427. (Emphasis added.)[2]

Judgments in both cases No. 5608 and No. 5659 are affirmed, with costs in each case to respondents.

ZENOFF, BATJER, MOWBRAY, and THOMPSON, JJ., concur.

---

[2]The trial court held that there was a total failure of consideration *and* a right to rescind because of appellant's misrepresentations. Fraud was not pleaded as a defense and neither party discusses the issue on appeal, though it appears that by concluding there was a right to rescind because of misrepresentations, the trial court has found fraud. In Poe v. La Metropolitana Co., 76 Nev. 306, 353 P.2d 454 (1960), this Court upheld a lower court's finding of fraud despite a failure to plead fraud affirmatively by the defendant. The court relied upon NRCP Rule 15(b) and held that the failure of the plaintiff to object to admittance of evidence of misrepresentations on the ground that fraud had not been pleaded barred his raising the issue on appeal.