JULIETTE MOORE, Appellant, v. KATHERINE R. PRINDLE and GEORGE E. WILKINSON, Respondents.

No. 4724

July 29, 1964 394 P.2d 352

*Nada Novakovich,* of Reno, for Appellant.

*Oliver C. Custer,* of Reno, for Respondents.

## OPINION

By the Court, BADT, C. J.:

This case involves an appeal from a refusal to grant relief from a forfeiture clause of a land sale contract. On September 6, 1957, the appellant Moore contracted

to buy certain improved real property, a rooming house, from the respondent Prindle. The contract provided for a purchase price of $15,000 to be paid, $2,000 down, and 24 consecutive monthly payments of $125, followed by monthly payments of $225 until the balance was paid, 7% interest on the declining balance. The buyer also agreed to assume an indebtedness owed to Union Federal Savings & Loan Association, which was secured by a first deed of trust. It further provided that "time is of the essence," and in the event of a default, all the payments would be considered as rent and liquidated damages, in effect a forfeiture clause. The buyer was given a grace period of 35 days and there was to be a 10-day written notice of default, during which time the default could be cured. The buyer also agreed to pay the taxes and any assessments levied against the property. There were several other important contract provisions which will be discussed in the course of the opinion.

The seller executed a deed to the buyer, and the buyer executed a quitclaim deed to the seller. These deeds, together with escrow instructions, which embodied provisions of the contract, were deposited with Pioneer Title, which was to act as escrow agent.

The buyer became delinquent in her monthly payments. In February of 1961 (the day of the month does not appear in the record) the parties entered into a new contract evidenced by new instructions to the escrow agent.

On August 15, 1961, Union Federal filed its notice of default. On October 11, 1961, the seller, through the escrow agent, notified the buyer "that unless the above-captioned account has been brought current on or before October 16th (next Monday) it is the intention of Mrs. Prindle to default your contract and thereby cancel this account." On October 16th Mrs. Moore, the buyer, tendered $152, a monthly payment under the February, 1961, contract, to the escrow agent. This tender was refused. The deeds were removed from the escrow agent's possession by the seller Prindle on October 18th, and the escrow was canceled. Prindle conveyed her equity in the property to respondent Wilkinson on October 20th.

Sometime between October 16th and October 23rd (record does not indicate when) the escrow agent advised Mrs. Moore's counsel that the amount in default was $587.75. On the latter date such counsel tendered a check for said sum. This tender was refused because the escrow had been canceled by Prindle. On October 25th, 1961, the appellant filed her complaint seeking "to redeem said contract of sale and said premises upon payment to the defendants the amount due thereon."

The trial court found "that plaintiff was continually in default under the terms and conditions of the original agreement because of her admitted failure to pay real estate taxes, assessments, and monthly payments on time." The trial court did not consider that the February, 1961, agreement was in effect,[1] and denied equitable relief. Moore appealed.

Appellant in effect urges two points in support of her appeal: (1) that she was not in default; and (2) even if she were technically in default, the trial court was in error in not affording her equitable relief against the forfeiture.

In determining which contract is in effect the practical construction and interpretation of the parties as evidenced by their conduct is always persuasive, if not conclusive. Reno Club v. Young Investment Co., 64 Nev. 312, 182 P.2d 1011, 173 A.L.R. 1145; Flyge v. Flynn, 63 Nev. 201, 166 P.2d 539. Moore considered that the February, 1961, contract was controlling, because her monthly payments thereafter were in the amount required by that contract rather than the September, 1957, contract. The escrow agent was apparently under the same impression because it accepted those monthly payments, gave notice of default pursuant to the later contract, and allowed the deeds to be removed pursuant

---

[1] This appears from its written decision holding "the ORIGINAL AGREEMENT in full force and effect at all times material hereto." However, in its formal conclusions of law the court concluded: "That plaintiff's rights and remedy are governed and determined exclusively by the September 6, 1957, contract of sale and the letter of instructions dated February, 1961."

to the February, 1961, contract. Most important of all, Prindle, as evidenced by the October 11th notice, gave Moore five days in which to bring the account current, and justified the removal of the deeds on October 18 on the authority of the February, 1961, contract. We must reject Prindle's constantly reiterated contention that only the September, 1957, contract remained in effect because of the obvious intent of the parties as evidenced by their conduct.

(1) The February, 1961, contract meets all the technical requirements of a modification, under which part of the contract of 1957 was left in effect and part was changed. The main change benefiting Moore was to provide for smaller monthly payments ($152 in place of $225). The date of the monthly payments was also extended from the 6th to the 15th of the month. The consideration for such benefits was the shortening of the grace period of payments from 35 days to 10 days and the shortening of the required default notice from 10 days to 5 days. This written modification of the 1957 contract was accompanied by an oral agreement testified to by Moore and not denied by Prindle of a waiver of the December, 1960, and January, 1961, monthly payments. The details of the waiver were not definitely explained but from our understanding of the circumstances the payment of the December, 1960, and January, 1961, installments was deferred without specific description of the extent of the deferment, but Moore's testimony that Prindle simply desired that the contract was to be kept current would indicate that this open-end contract was to remain effective until the entire balance of principal and interest was made. This would include adding the December, 1960, and January, 1961, payments to the end of the contract.[2] Moore's testimony as to the waiver of the December and January payments with Mrs. Prindle's only requirement that the account thereafter be kept current satisfies us that the arrangement then made by the parties likewise constituted a waiver of any

---

[2] The parol evidence rule was not brought into question.

prior delinquencies. It is true that the modified instructions to the title company contained a paragraph reading as follows:

"It is further understood that the buyer will, within four months from the date hereof, deposit with you such sums as are necessary to bring the payments on the note secured by the Deed of Trust in favor of the Union Federal Savings and Loan Association current, that said sums may be accepted by you in amounts equal to one or more payments, with penalties which may be assessed by the Union Federal Savings and Loan Association."

It is to be noted that this paragraph is bare of any requirement for the making of payments in addition to the monthly payments. "Sums [such] as are necessary to bring the payments on the note secured by the deed of trust * * * current" would be provided, according to the record, by less than two of the regular monthly payments—certainly by four payments. When we consider this provision in connection with the provision in the original contract and in the original escrow instructions that remained intact, we find that the escrow holder was still required to apply all payments as follows: first, to Union Savings interest; second, to Union Savings principal; third, to Prindle interest; and fourth, to Prindle principal. It is further confirmed by the last paragraph of the February, 1961, instructions to the effect that such instructions were to be temporary in nature and that "as soon as the payments on the Union Federal Savings * * * note have been brought current" a new agreement and supplementary instructions would be prepared and delivered.

Perhaps more important is the following paragraph which remained intact in the September, 1957, agreement:

"You are further instructed that in the event of the buyer being in default in the payment of any said moneys at the times specifically provided for the payment of the same as herein set forth, and unless demand is made upon you for the return of the said deed to the seller, or to her order, by reason of such default, then you shall be and are hereby authorized and empowered

to accept from the buyer such delinquent payments without any authorization, written or otherwise, from either party to accept the same."

The receipts signed by the escrow holder were all in evidence—first, by means of a passbook, and secondly, by means of separate receipts, all in accordance with the escrow holder's practice and on forms supplied by it. These receipts show that from the time of the February, 1961, agreement to and including August, 1961, the required monthly payments aggregated $912; the aggregate of the monthly payments actually made was the sum of $989.85.

Moore was current till August, 1961. At the time the notice of default was mailed on October 11, 1961, the September payment was overdue and the October payment was due in four days. The September payment was tendered on October 16, and that default was thereby cured. The escrow agent wrongfully refused the payment. When the deeds were removed on October 18 the October 15 payment was due but the grace period did not end until October 25th. Since Moore's counsel tendered more than enough money to meet the October payment on October 23rd, this so-called delinquency was also "cured." Moore was not in default in the monthly payments on October 18th when the deeds were removed and the escrow canceled.

But respondent calls our attention to the fact that the escrow instructions of February, 1961, above recited in full to the effect that Moore would in four months deposit the sums necessary to bring the Union Savings note current were not complied with, and that under the unaltered provisions of the September, 1957, contract any default would entitle Prindle (subject to days of grace and notice of default) to withdraw her escrow deed and be under no obligation to convey. She also calls attention to the fact that the Union Savings had declared its contract in default and had recorded a 90-day notice of sale under statutory requirements for foreclosure of a deed of trust. This contention, however, is defeated for two reasons. In the first place, the Union Savings' action

in recording its notice of default was not the result of Moore's failure to make payments but the result of the escrow holder's failure to apply these payments as required by the escrow instructions, first to the interest and principal payments on the Union Savings' trust deed. In the second place, the Union Savings' recordation of its notice of default threatened no immediate loss of the property. At any time within 90 days this could have been cured.

The contention that Moore is in default because she did not pay the taxes and assessments is also without merit. Neither the deed of trust to Union Federal or a copy of the deed is in the record. While the court below seemed to rely on the fact that Prindle's notice of default was justified by Moore's non-payment of taxes and assessments, the testimony of the escrow agent's assistant manager was definitely to the fact that Union Federal simply paid the taxes and added them to the balance due on its deed of trust. Its eventual notice of foreclosure sale is not in the record. It is only brought to the court's notice by a letter dated October 11, 1961, from the escrow agent to Prindle, saying it had "been provided with notice of foreclosure," and the escrow agent's assistant manager's testimony that the Union Federal notice of foreclosure was recorded August 15, 1961. Nothing was said about the payment of taxes. Apparently the Union Federal action was not based on the failure to pay the taxes. The exhibits show that Prindle definitely and conclusively did not predicate her notice of default on Moore's failure to pay the taxes. Prindle did not suffer any prejudice by reason of the fact that Union Federal had paid the taxes and charged the same against its deed of trust.

This court has indicated a land sale contract as a security device is permissible. Mosso v. Lee, 53 Nev. 176, 295 P. 776; Canepa v. Durham, 62 Nev. 417, 153 P.2d 899, 155 P.2d 788. However, a court of equity will always strictly construe such a contract when it contains a forfeiture clause. The forfeiture will only be

enforced when the seller has complied with every requirement and the buyer is in default. Since we have found no actionable default, there can be no forfeiture.

(2) Because the record is in some confusion by reason of missing facts which would have been helpful if supplied, and because counsel for the respective parties are directly in conflict in their interpretation of what is shown by the record, and because the trial court did not have the assistance of an accountant, and because, after all, the trial court did find that Moore was in default, we must admit the possibility of error in the figures we have extracted from the record.[3] In view of this possibility, we find it necessary to give our attention to the question whether the trial court abused its discretion in adjudging a forfeiture rather than affording equitable relief to the buyer.

We recognize the value to both sellers and buyers of real property in allowing the security device used in this case. See 12 Kan.L.Rev. 475.

Assuming that there was in fact a default, we hold the circumstances of this case, coupled with the inadequacy of the 5-day-notice provision in the February, 1961, contract, cry out for equitable relief. The legislature has provided lengthy notice or redemption periods for most security devices.[4]

The receipts and accounts in evidence show quite definitely Moore's very substantial equity. On October 6, 1961, the balance of payment due Prindle was $6,700.71, and the balance due Union Federal, $2,518.89. Subtracting the sum of these balances from the $15,000 contract price shows Moore's equity as $5,780.40, over 38% of the total price. Moore had also constructed an addition

---

[3] For example, the escrow holder had no notation in its records of the waiver of the December, 1960, and January, 1961, payments, nor of the fact that $75 had been paid by Moore to Prindle out of escrow. As these three items were established in the evidence, they must be taken into consideration.

[4] The period for redemption from a strict foreclosure is one year. NRS 21.210. The period of notice of sale under a deed of trust is three months. NRS 107.080.

to the building. The case at bar presents a typical situation which illustrates how inadequate a five days' notice can be. The letter sent on October 11th was not received until Thursday, October 12th. October 16th, 1961, fell on a Monday, thus Saturday and Sunday were unavailable to the buyer and the five days was in reality two days' notice. It is not unreasonable to assume that a buyer who is behind in her payments may reasonably need more than two days in which to raise the amount of money needed to cure the delinquency.[5]

Moore tendered the amount necessary to cure the default within a reasonable time. As was said in the case of Mosso v. Lee, 53 Nev. 176, 295 P. 776, "* * * there can be no doubt in this age, even where time is of the essence of a contract to convey real estate, coupled with a provision of forfeiture, but that a court of equity will grant relief from a default and a declaration of forfeiture if the condition be subsequently performed, or tendered, without unreasonable delay, where no circumstances have intervened that would render it unjust or inequitable to give such relief." See also the authorities cited with approval in Mosso v. Lee, supra. We do not deem the purchase of the property by Wilkinson at half price an intervening circumstance which would prevent the application of the above language from Mosso v. Lee. Moore offered to make Wilkinson whole.

Fully in accord with our conclusion that equity should have relieved Moore from the forfeiture in this case is the decision of the United States Circuit Court of Appeals from the Ninth Circuit in Ward v. Union Bond & Trust Company, 243 F.2d 476 (1957). In affirming the relief from the forfeiture adjudged by the district court, the court of appeals said:

[5]Many states have by statute specifically provided grace periods before permitting forfeiture of installment land contracts. Arizona has provided from 30 days to 9 months, depending upon the proportion of payments; Iowa, 30 days; Louisiana, 45 days; Maryland, 30 days; Minnesota, 30 days; North Dakota, 1 year. The special statutory sections are cited in Note 30, 12 Kan.L.Rev. 482 (May, 1964). Nevada has no such statute, but the growing necessity for one is apparent.

"There is no equitable principle which is more firmly established in American jurisprudence than the premise that where a vendee has paid a considerable portion of the purchase price or if the property has largely enhanced in value by reason of permanent improvements, or otherwise, or if for any other reason it would be inequitable to grant a cancellation of the contract, or refuse a defaulting vendee reasonable opportunity to cure his defaults, it is within the inherent power of a court of chancery, independent of statute, to decree that the property be sold by judicial sale with the view that the purchase price, expense of litigation and sale shall first be paid, with the balance over, if any, to the vendee, thus preserving, so far as is practicable, the respective equities of the vendor and the vendee."

In Howard v. Bar Bell Land & Cattle Co., 81 Idaho 189, 340 P.2d 103 (1959), the court cited with approval Ward v. Union Bond & Trust Company, but came to a different conclusion by reason of special circumstances foreign to the present case.

The case is remanded to the trial court for determination of the amount of money necessary to make Wilkinson and Prindle whole, including legal interest. Upon the tendering of that amount by Moore within 30 days from notice of such determination, Wilkinson must be ordered to convey the property forthwith back to Moore, free of any encumbrances placed thereon by Wilkinson.

The court below also entered judgment in favor of Wilkinson and against Moore in the sum of $1,015.25 for rentals collected by Moore. From what has been said above, this judgment is also reversed.

In the event that Moore does not tender the sums necessary under the final order of the district court pursuant to this opinion within 30 days from notice thereof, then the judgment of the court below will stand affirmed. No costs are awarded on this appeal.

McNAMEE and THOMPSON, JJ., concur.