**In the Matter of LAKE TAHOE LAND CO., INC., Debtor.**

**DIVERSIFIED MORTGAGE INVESTORS, Plaintiff,**

v.

**LAKE TAHOE LAND CO., INC., Defendant.**

**Bankruptcy No. 79–00541.**

**Adversary No. 80–0005.**

United States Bankruptcy Court, D. Nevada.

April 24, 1980.

Richard W. Horton, Lionel, Sawyer & Collins, Reno, Nev., for plaintiff Diversified Mortg. Investors.

Timothy J. Henderson, Wilson, Henderson & Nelson, Reno, Nev., for debtor-defendant.

IN PROCEEDINGS FOR REORGANIZATION UNDER CHAPTER 11

OPINION AND DECISION

BERT M. GOLDWATER, Bankruptcy Judge.

This is an action to vacate the automatic stay under 11 U.S.C. § 362(d) by the holder of a first deed of trust on vacant land at Lake Tahoe, Nevada, a part of which is forest land and part of which land has been subdivided into parcels for condominiums with street access and water and sewer connections.

On April 20, 1971, defendant-debtor borrowed $1,200,000 for five years from plaintiff (of which $1,061,210 was actually advanced) secured by a first deed of trust. The loan agreement provided for dwelling units on certain parcels with release clauses for the dwelling units on subdivided land and acreage releases for forest land.

Another loan was made in August of 1972 by a further advance of $438,790 to be used to pay delinquent monthly interest of $79,-770 through August of 1972, a fee of $30,-000 and an interest reserve account created in the sum of $329,020.

In addition, plaintiff has advanced $106,628 for taxes making a total of $1,726,792. Plaintiff received $527,682 for release of various parcels from the security and now has a principal balance due of $1,199,110.

Unpaid interest on both notes has accrued as of April 7, 1980 in the sum of $875,645.12, making a total balance of principal and interest due as of the latter date of $2,074,757 with a daily interest accrual of $460.

Both notes were payable in full on April 19, 1976 and have been in default since that date.

On June 3, 1977, defendant filed a State court action for a declaratory judgment contending the interest on the loan was usurious and that plaintiff had breached the release clauses. Plaintiff's foreclosure was stayed pending the hearing which resulted in a decision in favor of plaintiff that the loan was not usurious, neither had plaintiff breached the release clause agreements. The lower State court decision was followed by an appeal to the Supreme Court of Nevada which affirmed the lower court in all respect on November 30, 1979.[1]

Defendant filed a petition for reorganization in this Court December 18, 1979. The complaint to vacate the stay was filed February 6, 1980, and the consolidated preliminary and final hearing was set for trial on February 22, 1980. The trial was continued by stipulation of counsel to April 7, 1980, and argued and submitted on April 14, 1980. The plaintiff has thus been stayed from foreclosure by a State court or this Court for almost three years.

The deed of trust covers approximately 950 acres of forest land and a number of parcels of subdivided land on which there was allocated 1000 living units. Due to requirements of various State and local bodies, essentially in the field of planning, some parcels were assigned to condominium common property which required other parcels to be reassigned the dwelling units terminated on the common property. No final subdivision plan has been recorded. The county assessor, tax collector and engineer operate from a proposed acceptable plan on which dwelling units have been reassigned as against an original plan which was not acceptable to State and county officials but formed the basis of the loan and agreement for release of acreage and dwelling units.

Defendant has sold some of the land under contracts of sale without obtaining release of plaintiff's deed of trust. The contract buyers in most cases have paid taxes and current improvement district assessments. There remains the legal problem of plaintiff's security as against third parties claiming purchase from or through defendant. Defendant's president, at trial, testified that at least five of the contracts of sale [2] were in default in payment to debtor and the property could be restored to debtor. No details were given as to how this could be accomplished.[3]

As a result of the reassignment of dwelling units, there are now 26 parcels in the name of debtor with 87 dwelling units assigned to these parcels. Approximately 62 parcels have been transferred to the condominium home owners' associations, but not released from the deed of trust. The debtor's estate has an interest in parcels transferred to third persons under contract of sale. Those conveyed outright to the home owners' associations are not within the meaning of "property of the estate" against which the automatic stay of Section 362(a) acts. The debtor's petition stays any act to enforce a lien against property of the estate. Property conveyed outright to other entities although encumbered by plaintiff's deed of trust cannot be considered "property of the estate".

---

1. *Ferdie Sievers and Lake Tahoe Land Co., Inc., and Kingsbury Leasing Co. v. Diversified Mortgage Investors* (1979) 95 Nev. ——, 603 P.2d 270.

2. There appears to be 13 parcels in names other than either debtor or the home owners' condominium association.

3. A contract of sale in Nevada has been held to be a permissible security device. (*Moore v. Prindle* (1964) 80 Nev. 369, 394 P.2d 352.) Rescission and repossession, no matter how long the default, is not favored. (*Canepa v. Durham* (1944) 62 Nev. 417, 153 P.2d 899, 155 P.2d 788.)

Under 11 U.S.C. 362(d), the stay may be terminated, annulled, modified or conditioned for either of two reasons:

1. For cause, including lack of adequate protection of an interest in property, *or*

2. With respect to stay of an act against property, if:

a. The debtor has no equity, *and*

b. The property is not necessary to effective reorganization.

There is no need here to consider the second alternative. The land, both forest parcels and remaining parcels with assigned dwelling units, constitute practically the only assets of the debtor and would be necessary for effective reorganization.[4]

Plaintiff presented a qualified appraiser who appraised the market value of the developed parcels at $16,000 to $18,000 per dwelling unit and the undeveloped forest land from $500 to $3,500 per acre. The appraiser's value of 87 dwelling units at $18,000 each would total $1,566,000. The forest land was appraised at $990,500. Both of these figures must be discounted because of the peculiar market for land which requires a time element for sales over a period of six years. Discounted by factors for six years at 10%, the forest land is valued at $719,000 and the subdivided land at $1,137,960, or a total of $1,856,960.

The Court chooses to adopt plaintiff's appraisal as realistic although defendant was able to show some current sales of defendant's parcels on five year contracts at a gross sales price of $25,000 per unit.

The issue is whether plaintiff has adequate protection.

Adequate protection is not defined in the Bankruptcy Code. Section 361 suggests some methods such as providing for periodic cash payments in the event of decrease of value, replacement lien to cover decreases of value or granting other relief "as will

result in the realization [of] such entity of the indubitable equivalent of such entity's interest in such property."

Opinion as to what is adequate protection will vary greatly from court-to-court.

"Adequate protection" as used in the new Bankruptcy Code was derived from the language in *In re Murel Holding Corp.*, 75 F.2d 941 (2d Cir. 1935), where it is said at page 942:

"It is plain that 'adequate protection' must be completely compensatory; . . . a creditor . . . wishes to get his money or at least the property. We see no reason to suppose that the statute was intended to deprive him of that in the interest of junior holders unless by a substitute of the most *indubitable equivalence.*" (Emphasis supplied.)

Section 506 provides for the determination of secured status. That is, value may become the allowed secured claim with the balance unsecured where value does not equal or exceed the amount of money due.[5]

Section 506(a) provides in part:

"Such value shall be determined *in light of the purpose of the valuation* and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest." (Emphasis added.)

The plaintiff's proof of value in this action to lift the stay may be different than the proof of value which may be presented in a hearing upon a confirmation of a plan. Nevertheless, it is difficult for a creditor to wear different hats in each proceeding. Plaintiff has chosen to establish a value of $1,856,960. The debt due plaintiff exceeds two million dollars. For the purpose of this hearing there is insufficient land value to adequately protect the debt due plaintiff.

Surrounding circumstances also give rise to good cause why plaintiff should not be

---

4. The debtor is in the business of developing and selling land; it sells rather than "liquidates" its inventory of parcels of land.

5. Providing, however, if there is recourse only to the property, the unsecured balance may not be allowed as an unsecured claim [11 U.S.C.

§ 502(b)(1)] because it is not enforceable against the debtor. Of course when a plan is submitted in a Chapter 11 case, there may be special treatment of an allowed claim regardless of recourse. See 11 U.S.C. § 1111(b).

delayed further in its right to foreclose. Plaintiff's debt has been due and payable for four years. In addition, plaintiff's loan was based upon dwelling units assigned to certain parcels to be released upon payment of agreed amounts upon the sale of those parcels. The lot densities were redistributed without any approval from plaintiff in violation of the contract.[6] These facts together with the tax delinquencies and the staggering amount of unpaid interest justify a finding of cause for lifting the stay.

It has been nine years that this property has been in development and it would likely require at least three to five years more. There are running battles over assessments and taxation with the county which have not been resolved over a period of years with cases pending in both the lower and Supreme State Courts.[7] It is too uncertain to say that a loan made in 1971 has adequate protection when the cushion is as thin as the values shown here.[8]

■ The debtor has not carried its burden of proof on the issue of adequate protection. See 11 U.S.C. § 362(g).

Defendant's case without the use of any expert appraiser was that there were at least six current sales of parcels of subdivided property at the rate of $25,000 per dwelling unit. These were upon five year sales contracts. In addition, defendant showed, over objection, several sales of forest land at prices exceeding those used by plaintiff's appraiser for comparable sales. The Court, however, is satisfied that the figures used by plaintiff's appraiser fairly reflect the value.

6. *Ante*, fn. 1.

7. Testimony was that there is unsettled disputes as well as litigation because of the reassignment of dwelling units and the change of status of some parcels to common areas.

Debtor offered to pay all back taxes within 30 days, but this is no more than debtor would be required to do in any event. Taxes are delinquent and there are tax liens on many parcels since 1976–1977 as well as liens of the improvement district.

8. Plaintiff's rate of interest at slightly more than 14% is not inadequate, but interest has accumulated to almost $900,000.

■ In this Court's opinion, adequate protection, for a lender as opposed to a seller, for land, even raw land partly developed by roads, sewer and water, is a leverage of 40% to 50% of the market value.[9] Without such a cushion there is insufficient protection.[10] The Court in this case cannot find from defendant's proof any value for a cushion of protection. Plaintiff's proof establishes good cause and lack of adequate protection.

Let judgment be entered for plaintiff vacating the stay upon the ground that there is good cause and plaintiff does not have adequate protection for its debt.

9. In other words, an experienced lender will not loan more than 50% to 60% of appraised value of raw land.

10. There was no testimony as to the relative percentage of the original loan in 1971 to the then appraised value of the land, but the parties relied upon an agreement of 1000 dwelling units plus forest parcels to be paid for as released at fixed amounts. This has been completely frustrated by the manner in which dwelling units were reassigned and parcels conveyed without plaintiff's consent.