**In re HIGH SKY, INC., Debtor.**

**LINCOLN BANK, Plaintiff,**

**v.**

**HIGH SKY, INC., Defendant.**

**Bankruptcy No. 5–80–00671.
Adv. No. 5–81–0017.**

United States Bankruptcy Court,
M. D. Pennsylvania.

Aug. 4, 1981.

Dilworth, Paxson, Kalish & Levy, Robert W. Maris, William A. Scari, Jr., Philadelphia, Pa., for plaintiff.

John H. Doran, Robert C. Nowalis, Wilkes-Barre, Pa., for defendant.

## OPINION

THOMAS C. GIBBONS, Bankruptcy Judge:

This adversary proceeding was brought by the plaintiff Lincoln Bank pursuant to § 362(d) of the Bankruptcy Code, 11 U.S.C. § 362(d), and Rule 4001 of the Interim Bankruptcy Rules for relief from the automatic stay imposed by § 362(a) following the debtor's filing a petition under Chapter 11 of the Code, 11 U.S.C. § 1101–1174, on December 17, 1980. The plaintiff seeks to modify the stay so as to permit a Sheriff's sale on the debtor's real estate and improvements on which the plaintiff holds a mortgage. The sale was to have been held by the Sheriff of Columbia County on December 18, 1980, one day after the filing of the debtor's petition. The mortgage was given in May of 1973 to secure a promissory note in the principal sum of $400,000.00. The proceeds of the loan were used to repay an existing indebtedness, for working capital to develop the property for second home sites and for construction of a congeniality building.

The plaintiff alleges that the debtor has no equity in the mortgaged property and that the Bank does not have, nor has it been offered, adequate protection for its interest in the property. The plaintiff further alleges that the debtor has no reasonable prospect for reorganization. It claims that if the automatic stay is not modified, it will suffer irreparable injury, loss and damage.

In addition to denying the above allegations in the plaintiff's complaint, the debtor asserts that the value of the mortgaged property is several times greater than the Bank's claim and that the Bank's proceeding with a Sheriff's sale would cause severe and irreparable harm to the debtor. It also maintains that there is an action now pending in Philadelphia County by the debtor against the Bank which, if successful, could make a reorganization a very real possibility and furthermore could result in the debtor's obtaining affirmative relief from the Bank for money damages.

The Court has decided to lift the stay in this case because we find that the debtor has not furnished the plaintiff with adequate protection for its interest in the property within the meaning of § 362(d)(1) of the Code.

## FINDINGS OF FACT

1. High Sky, Inc., the debtor, filed a voluntary petition under Chapter 11 of the Bankruptcy Code on December 17, 1980 and has continued in possession of its property since that date.

2. The plaintiff, Lincoln Bank, is the holder of debtor's Promissory Note, dated May 30, 1973, as modified by a certain Modification Agreement dated July 16, 1974, in the principal sum of $400,000.00 with interest thereon at the rate of two percent (2%) per annum above the Bank's prime money rate, but in no event less than eleven percent (11%) per annum.

3. The aforesaid Promissory Note of the debtor is secured by a Mortgage, dated May 30, 1973, on the real property and improvements of debtor situated partly in Cleveland Township, Conyngham Township and Locust Township, Columbia County, Pennsylvania, and more particularly described by plaintiff's expert witness, Donald E. Goertel, which description was termed accurate by Joseph Fraim, President of High Sky, Inc. and by defendant's expert witness, John M. Martin.

4. On May 30, 1974, the Bank caused judgment to be entered against the debtor on the promissory note in Delaware County, Pennsylvania.

5. The aforesaid judgment was exemplified to Columbia County, Pennsylvania, on June 13, 1974.

6. Upon request addressed to the Sheriff of Columbia County, Pennsylvania, dated October 21, 1980, a Sheriff's Sale of the mortgaged property in execution on the aforesaid judgment was scheduled for December 18, 1980, which sale has been stayed by virtue of these bankruptcy proceedings.

7. The President of the debtor and one of its principal owners testified that the purpose, in part at least, of filing the present proceedings was to prevent the Bank from executing on the judgment.

8. The amount due the Bank from the debtor on the date of the filing of the petition was $557,609.43 and since has increased to $606,286.48 as of the date of trial, April 27, 1981.

9. The debtor has acknowledged claims and liens in addition to that of the Bank amounting to $24,156.46 as indicated in its schedules and statement of affairs.

10. There is not a sufficient equity cushion in the property to constitute adequate protection of the Bank's interest in the property.

11. The debtor has offered no other adequate protection to the Bank of its interest in the property.

12. The debtor had obtained no refinancing as of the date of trial.

13. The debtor has filed no plan of reorganization to date.

## DISCUSSION

The filing of a petition under Chapter 11 of the Bankruptcy Code operates as a stay of the enforcement against the debtor of a judgment obtained before the commencement of the Chapter 11 proceeding and a stay of any act to obtain possession of property of the estate or of property from the estate. 11 U.S.C. § 362(a)(2)(3). In the instant case the Bank is attempting to execute on a judgment note secured by a first

mortgage on debtor's 435 acre tract of mountain land in Cleveland Township, Conyngham Township and Locust Township, Columbia County, Pa. The principal owners of the corporation intended to develop the site as an "ecology balanced private community."

The automatic stay imposed by § 362 of the Code is subject to termination or modification by the Court for grounds set forth in subsection (d) as follows:

"On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization."

Plaintiff alleges two grounds for relief from the automatic stay, to wit, (1) lack of adequate protection of its interest in the property, and, alternatively, (2) that the defendant debtor has no equity in the property and no reasonable prospect for reorganization. The Bank also maintains that the cumulative actions of the debtor in obtaining previous stays of the execution sale constitute "cause" for relief from the stay within the meaning of § 362(d)(1) of the Code.

■ Under § 362(d) the automatic stay may be terminated, annulled, modified or conditioned for *either* of the two reasons set forth in subsection (d), as evidenced by use of the disjunctive phraseology of (d)(1) and (d)(2). *In re Family Investments, Inc. d/b/a Octaves,* 8 B.R. 572, 7 B.C.D. 194 (Bkrtcy., W.D.Ky.1981); *In re Ruark,* 7 B.R. 46 (Bkrtcy., D.Conn.1980). There is no need to consider the second alternative here. The debtor is in the business of developing and selling land which constitutes its major asset and which would be necessary for an effective reorganization. See *In re Lake Tahoe Land Co., Inc.,* 5 B.R. 34 (Bkrtcy., D.Nev.1980). The issue, therefore, is whether or not plaintiff is adequately protected.

"Adequate protection" as used in the new Bankruptcy Code was derived from the language in *In re Murel Holding Corp.,* 75 F.2d 941 (2d Cir. 1935), where it is said at page 942:

"It is plain that 'adequate protection' must be completely compensatory; . . . a creditor . . . wishes to get his money or at least the property. We see no reason to suppose that the statute was intended to deprive him of that in the interest of junior holders unless by a substitute of the most indubitable equivalence."

*In re Lake Tahoe Land Co., Inc.,* supra, at 36.

■ Although the term is not precisely defined, § 361 of the Code sets forth three (3) nonexclusive examples of what may constitute "adequate protection" of an interest in property:

(1) periodic cash payments to the extent that the stay results in a decrease in the value of such interest,

(2) an additional or replacement lien to the same extent, or,

(3) other relief as will result in the realization of the indubitable equivalent of such interest.

None of these has been offered. Instead defendant contends that there is a substantial equity cushion which provides adequate protection for plaintiff's interest in the property. An equity "cushion" in and of itself may constitute adequate protection within the meaning of Section 362(d)(1). 2 *Collier on Bankruptcy,* 361.02(3) at p. 361–9, (15th Ed. 1979). *In re Pitts,* 5 B.C.D. 1129, 2 B.R. 476 (Bkrtcy., 1979).

■ In seeking relief from automatic stay, the creditor has the burden of proof on the issue of debtor's equity in the collateral, but the debtor has the burden on all other issues including adequate protection of the creditor. 11 U.S.C. § 362(g); *In re*

*San Clemente Estates,* 5 B.R. 605 (Bkrtcy., Cal.1980).

In the instant case the total claim of the Bank as of April 27, 1981, amounted to $606,246.48. (See plaintiff's Exhibit P–1 and N.T. 8). Additionally, the debtor listed liens of other secured creditors in the amount of $24,156.46 in its schedules and statement of affairs dated January 16, 1981. The Bank's expert witness determined the fair market value of the property to be $350,000.00 as of January 31, 1981, based upon a free and clear title and assuming that a developer could begin to sell and market the property immediately. The property was considered as a package consisting of three components: the approved subdivided lands; the unsubdivided portion of the property; and the buildings located on the property. (N.T. 33–5) On the other hand, the debtor's expert valued the property at $1,160,000.00. (N.T. 144). His opinion also considered the value per acre of both the subdivided and the undivided portions, added to a figure for the improvements.

It has been held that "adequate protection" for a lender as opposed to a seller, for land, even raw land partially developed by roads, sewer and water, is a leverage of 40–50% of market value. *Matter of Lake Tahoe Land Co., Inc.,* 5 B.R. 34 (Bkrtcy., Nev.1980). In contrast, 17.4% of the fair market value of *commercial real property* was held to be adequate protection for a secured creditor in *In re Rogers Development Corp.,* 2 B.R. 679, 5 B.C.D. 1392 (Bkrtcy., E.D.Va.1980). The court in *In re Pitts,* supra, found an equity cushion of 15.3% of the approximate fair market value of *residential property* to be minimal protection to a second mortgagee but sufficient to continue the automatic stay.

Here, we conclude that the debtor has failed to sustain its burden of proving that it has furnished the plaintiff with adequate protection for its interest in the property. In doing so, we have considered the cumulative effect of the following factors:

1. The equity cushion is decreasing daily due to the accumulation of interest on the Bank's judgment.

2. There was no evidence that the property was significantly appreciating in value.

3. The debtor has been unable to obtain refinancing since 1976.

4. No other protection has been offered by the debtor which would satisfy the "indubitable equivalent" requirement of § 361.

5. The Chapter 11 petition was filed by the debtor five months prior to the hearing on plaintiff's request for relief from stay and no plan of reorganization has been proposed.

6. The current economic conditions do not suggest a realistic prospect for a successful rehabilitation or reorganization under Chapter 11.

7. One purpose of the filing of the Chapter 11 proceeding was to forestall the pending foreclosure sale which was first listed in 1976.

8. The absence of an equity cushion sufficient to afford adequate protection to the Bank.

The valuation process through which an equity cushion is determined, at best, is inexact. In establishing an amount for the cushion, the Court must consider estimates and approximations founded on opinions and assumptions. *In re Tucker,* 5 B.R. 180 (Bkrtcy., S.D.N.Y.1980). We deal here in likelihoods and probabilities. *In re Pitts,* supra, 5 B.C.D. at 1130, 2 B.R. 476. The adequacy of protection afforded by an equity cushion, stated either as a dollar amount or as a percentage of the estimated fair market value of the property, must ultimately be determined upon equitable considerations arising from the particular facts of each proceeding. *In re Tucker,* supra, at 183. However, the value determination cannot be based on conjecture and mere speculation. *In re East Redley,* 4 B.R. 288 (Bkrtcy., E.D.Pa.1980).

The values of the property herein which were presented by one expert witness for each party were so far apart as to suggest either underevaluation or speculation. However, in reviewing the testimony of both appraisers, we feel that the approach

of the Bank's appraisal was more realistic. The appraiser used both the market approach and the development approach, but felt that the market approach was a more reliable indicator of the value of the property. (Plaintiff's Exhibit 2, p. 48.) In his report, he concluded that the highest and best use of the subject property is the sale of the entirety to an investor who will market the tract in 10 acre or larger parcels to sportsmen for hunting and recreational purposes. (Plaintiff's Exhibit 2, pp. 20–21; N.T. 36.) Among the negative factors included in his report which contributed to a lower evaluation than that of the debtor's expert and which we consider most significant are the following:

1. Present economic conditions including the high cost of borrowing and the decrease in disposable income which contribute to the drastic decline in the market for second home sites.

2. The sizable drop in the number of tourists visiting Northeastern Pennsylvania due to the increase in gasoline prices.

3. The increased regulation of land development.

4. The rather remote location of the property along the southern boundary of Columbia County.

5. The substantial supply of lots in the market area accompanied by a limited demand. (Plaintiff's Ex. 2, pp. 22–25.)

Even if we were to assume the value of the property to be the median of two figures, we still conclude that the equity cushion is not sufficient to constitute adequate protection for a debt of over $600,000.

Finally, the debtor submits that the Court may consider the existence of a claim by the debtor against the Bank in exercising its discretion to lift or continue the automatic stay. The claim referred to is a pending action in Philadelphia County[1] wherein the debtor is seeking damages against the Bank for alleged interference with the debtor's business. However, we are in agreement with the decision rendered in the case of *In re Born*, 10 B.R. 43 (Bkrtcy., S.D.Tex.1981), wherein the Court held that even if a debtor's affirmative defenses and counterclaims against a secured creditor are valid and will eventually be sustained, the secured creditor is entitled to either a substitute lien, periodic payments or other indubitable equivalent until a final nonappealable judgment has been rendered which will avoid or diminish the prebankruptcy contract.

The legislative history of Section 362(e) of the Code grants the Court broad discretion to hear a debtor's affirmative defenses and counterclaims provided they are segregated from the informal, expeditious and summary hearings for adequate protection and relief from stay. See *In re Executive Leasing Corp.*, 3 B.R. 261, 6 B.C.D. 140 (Bkrtcy., D. Puerto Rico 1980). In that case the Court quoted from the legislative history as follows:

"At the expedited hearing under subsection (e) and at hearings on relief from the stay, the only issue will be lack of adequate protection, the debtor's equity in the property, and the necessity of the property [3] to an effective reorganization of the debtor, or the existence of other cause for relief from stay. This hearing will not be the appropriate time at which to bring in other issues, such as counterclaims against the creditor, which although relevant to the question of the amount of the debt, concern largely collateral or unrelated matters. This approach is consistent with that taken in cases such as *In re Essex Properties, Ltd.*, 430 F.Supp. 1112 (N.D.Cal.1977), that an action seeking relief from the stay is not the assertion of a claim which would give rise to the right or obligation to assert counterclaims. Those counterclaims are not to be handled in the summary fashion that the preliminary hearing under this provision will be. Rather, they will be subject of more complete proceedings by

---

1. *High Sky, Inc. et al v. Lincoln Bank and Elmwood Federal*, C.P. Phila., No. 1660 Oct. Term 1976.

the trustee to recover property of the estate or to object to the allowance of a claim. However, this would not preclude the party seeking continuance of the stay from presenting evidence on the existence of claims which the court may consider in exercising its discretion. What is precluded is a determination of such collateral claims on the merits at the hearing." S.Rep.No.989, 95th Cong., 2d Sess. 55 (1978); cf. H.R.Rep.No.595, 95th Cong., 1st Sess. 344 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787. (Underscoring supplied.)

Since the court in its discretion may exclude evidence dealing with those affirmative defenses and counterclaims, it can, *a fortiori*, not consider a claim pending in another court.

## CONCLUSIONS OF LAW

1. The debtor has not sustained its burden of proving that it has furnished the plaintiff with adequate protection for its interest in the property, as there is not a sufficient equity cushion in the property and no evidence was offered by the debtor that would otherwise adequately protect the Bank's interest within the meaning of § 362(d)(1) of the Code.

2. The plaintiff is entitled to relief from the automatic stay imposed under 11 U.S.C. § 362(a) for cause, including lack of adequate protection of its interest in the subject property.

In view of all the foregoing, it is not necessary for us to decide whether the alleged delaying tactics of the debtor in previous state court litigation constitute "cause" for relief from the stay within the meaning of § 362(d)(1) of the Code. However, we note that the efforts of the Bank to execute on its judgment through a Sheriff's sale were stayed no less than six times since 1976 and feel that the observation of the Third Circuit in the recent case of the *Matter of Union Deposit Center Equities Limited Partnership,* 639 F.2d 1045 (3rd Cir. 1981) is appropriate here:

"A first mortgagee-creditor, especially one whose debt comprises the overwhelm-ing bulk of the debtor's aggregate liabilities, should not be kept in cold storage indefinitely while its security erodes in the faint hope that some miracle may happen." Quoting from *In re Holi-Penn, Inc.,* 535 F.2d 841, 848 (3rd Cir. 1976).