## In re OCEAN STATE OPTICAL CO., INC., Debtor.

## RHODE ISLAND HOSPITAL TRUST NATIONAL BANK, Plaintiff,

v.

## OCEAN STATE OPTICAL CO., INC., Defendant.

Bankruptcy No. 82–00444.
Adv. No. 82–0227.

United States Bankruptcy Court,
D. Rhode Island.

Sept. 7, 1982.

James L. Taft, Jr., Taft, McSally & McKenna, Providence, R. I., for plaintiff.

Abraham Belilove, Arcaro, Belilove & Kolodney, Providence, R. I., for defendant.

DECISION

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on June 11, 1982, on Rhode Island Hospital Trust National Bank's complaint for relief from the automatic stay and for leave to sell collateral.

Ocean State Optical Co., Inc. operates a wholesale mail order business, selling plastic and metal eyeglass frames to opticians and optometrists throughout the country. On January 10, 1979, Ocean State entered into a loan agreement with the Bank, and as security Ocean State granted the Bank a security interest in its machinery, equipment, inventory and accounts receivable. Thereafter, on May 25, 1982, Ocean State filed a Chapter 11 petition, after a long period of continual losses which resulted in an arrearage (as of the filing date) of $232,-143.63 on the secured debt owed the Bank. The Bank immediately filed a complaint to modify the automatic stay [1] and for leave to foreclose, alleging that: (1) the Debtor has

---

1. *§ 362. Automatic stay*
(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminat-

ing, annulling, modifying, or conditioning such stay—
(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

no equity in the inventory, (2) Ocean State is in default of the loan agreement because timely payments have not been made, and (3) the Bank's interest in the collateral is not adequately protected.

## FINDINGS AND CONCLUSIONS

(1) Despite specific repeated requests of the Court, the parties failed to even stipulate as to the number of frames in inventory.

(2) Testimony concerning the value of the inventory presented by two expert witnesses for the bank and by two principals of Ocean State were so far apart that both versions are unreliable.

(3) Manuel Ponti's opinion that the liquidation value of the inventory is about $20,000 (about 10% of cost) is rejected.

(4) Richard Ferris' opinion that the most effective method of selling the inventory would be to mix obsolete with marketable frames, and sell them in lots, is also rejected. That procedure would only dilute the average per frame price that could be obtained for the so called "marketable" frames.

(5) Approximately 22,070 frames are "dead stock", and should probably be abandoned or disposed of for whatever minimal price is obtainable.

(6) Sale of the marketable frames in the ordinary course of business will yield the highest return.

(7) The Debtor's contention that the value of the inventory is approximately $283,000 is unsupported by any competent evidence.

(8) The Debtor's principals have not shown either the ability or the inclination to contribute sufficient funds to the Debtor to even begin to cure the default, or to create an equity cushion.

(2) with respect to a stay of an act against property if—
(A) the debtor does not have an equity in such property; and
(B) such property is not necessary to an effective reorganization.

**2.** *§ 362. Automatic Stay.*
. . . .

(9) The Debtor has approximately $25,000 in accounts receivable.

(10) The maximum value of the remainder of the Debtor's assets is $10,000.

(11) Based on the record in this proceeding, the Court is unable to determine, with accuracy, the value of the inventory. However, the evidence does indicate that under no circumstances could the maximum value of the collateral equal the amount owed to the bank ($232,000), and based on the evidence I conclude that the absolute upper limit of value of the collateral is $150,000.

(12) Projections concerning the Debtor's prospects for future earnings are pure speculation, such as the Debtor's unsupported prediction that sales will increase by 20 percent "if the business is allowed to continue."

(13) The Debtor's principals are also unreasonably optimistic about future earnings and profits, in that their projections do not take into account the cost required to realize the profit.

(14) In this case the Debtor has no offer of outside capital; its only proposal is to expand marketing of the frames and to reduce expenses so that future sales may generate the cash necessary to fund the plan. A careful examination of all the evidence fails to show any realistic prospect for a successful rehabilitation or reorganization under Chapter 11.

In order to obtain relief from the automatic stay under § 362(d), the creditor has the burden under § 362(g)(1) [2] of proving that the Debtor does not have an equity in the inventory. The bank has met this burden—the maximum value of the collateral is $150,000, and the balance due the secured

(g) In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section—
(1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and
(2) the party opposing such relief has the burden of proof on all other issues.

creditor is in excess of $230,000. The Debtor, on the other hand, has fallen far short of making any reasonable showing that the secured creditor is adequately protected.[3] *Calistri v. Barrows (In re Barrows)*, 15 B.R. 338, 340 (Bkrtcy.M.D.Pa.1981).

Although adequate protection is not precisely defined, § 361 of the Code sets forth three examples of adequate protection of a secured creditor's interest:

(1) requiring the trustee [or the Debtor-in-Possession in this case [4]] to make periodic cash payments to such entity, to the extent that the stay under section 362 of this title . . . results in a decrease in the value of such entity's interest in such property;

(2) providing to such entity an additional or replacement lien to the extent that such stay . . . results in a decrease in the value of such entity's interest in such property; or

(3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

None of these protections have been offered by the Debtor.

Based on the evidence presented, the Debtor is unable to make periodic cash payments to cure the default and also remain current with the bank. The principals of the Debtor have not shown the ability or willingness to make such contribution, and the Debtor is not in a position to grant an additional security interest in other property to protect the gap in the equity. Finally, the Debtor has not offered the "indubitable equivalent" of the creditor's interest in the property.

Although it is unable to propose anything even resembling adequate protection, the Debtor nevertheless argues that the Court is required to grant Ocean State a "breathing spell" to come up with "a suitable plan and perhaps propose 'reduced periodic payments' to secured creditors which 'comports with realistic business economics' and...[to] demonstrate debtor's ability to perform under a continued plan." See Debtor's Memorandum, P.2. Nowhere does the Code provide that debtors have a vested right to "time" at the expense of further deterioration of the secured creditor's already undersecured position. The automatic stay is a two-way street, and to receive the sweeping benefits of its protection, Congress was most specific in setting out the prerequisites to be met by debtors in order to keep the automatic stay in place. If debtors automatically became entitled to a "breathing spell" merely by filing under Chapter 11, the specific requirements of adequate protection would be unnecessary and meaningless. *See generally, Industrial Nat'l Mortgage Co. v. Union Deposit Center Equities Ltd. Partnership (In re Union De-*

**3.** It is not the Court's function to independently determine what would constitute adequate protection of the secured creditor's interest; the Debtor must affirmatively offer protection of the secured interest, and the Debtor has proposed nothing in this respect. *In re Saint Peters School*, 16 B.R. 404, 410 (Bkrtcy.S.D.N.Y. 1982); *First Connecticut Small Business Investment Co. v. Clark Technical Associates, Ltd. (In re Clark Tech Associates, Ltd.)*, 9 B.R. 738, 741 (Bkrtcy.D.Conn.1981); *City National Bank v. San Clemente Estates (In re San Clemente Estates)*, 5 B.R. 605, 6 B.C.D. 838 (Bkrtcy. S.D.Calif.1980).

**4.** Section 1107 of the Bankruptcy Code provides:

(a) Subject to any limitations on a trustee under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter.

This section places a debtor in possession in the shoes of a trustee in virtually every way. The debtor is given the rights and powers of a chapter 11 trustee and is required to perform the functions and duties of a chapter 11 trustee (except investigative duties). He is also subject to any limitations on a chapter 11 trustee, and to such other limitations and conditions as the court prescribes.

*See* House Report No. 95–595, 95th Cong., 1st Sess. (1977) 404, U.S.Code Cong. & Admin. News 1978, p. 5787, 6360.

*posit Center Equities Ltd. Partnership)*, 639 F.2d 1045 (3rd. Cir. 1981); *Lincoln Bank v. High Sky, Inc. (In re High Sky, Inc.)*, 15 B.R. 332 (Bkrtcy.M.D.Pa.1981).

Based on the record before me, I conclude that there is no chance for a successful rehabilitation. Considering the lack of any equity cushion in the collateral, the huge arrearage due to the Bank, and the total absence of any offer of adequate protection, the conclusion that the stay should be vacated is inescapable. It is so ordered.