**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, v. PHODAY BABA PHATTEY, a.k.a. Foday Fatty, *Defendant-Appellant*. | No. 18-35998 D.C. No. 3:17-cv-00247-JWS-MMS OPINION |

Appeal from the United States District Court
for the District of Alaska
John W. Sedwick, District Judge, Presiding

Submitted August 5, 2019[*]
Anchorage, Alaska

Filed December 5, 2019

Before: Richard C. Tallman, Sandra S. Ikuta, and
N. Randy Smith, Circuit Judges.

Opinion by Judge Ikuta

---

[*] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

## SUMMARY[**]

### Immigration

Affirming the district court's grant of summary judgment in favor of the government, the panel held that the five-year statute of limitations set out by 28 U.S.C. § 2462, which generally applies to actions to enforce civil penalties, does not apply to denaturalization proceedings.

In 2010, Phoday Phattey was issued a certificate of naturalization. In 2017, the government learned that Phattey had obtained his citizenship by fraud and filed a complaint to revoke naturalization under 8 U.S.C. § 1451(a). Although § 1451(a) does not contain a statute of limitations, Phattey argued that the five-year statute of limitations set out by 28 U.S.C. § 2462 applies to revocation proceedings and that, therefore, the statute of limitations to bring the denaturalization action had expired.

Observing that the Supreme Court has long held that revocation of citizenship is not a penalty, the panel held that § 2462 does not provide Phattey a statute-of-limitations defense because denaturalization is not a penalty for purposes of § 2462. The panel rejected Phattey's argument that the relevant precedent had been superseded by *Kokesh v. SEC*, 137 S. Ct. 1635 (2017), in which the Supreme Court concluded that § 2462 applies to disgorgement actions brought by the Securities Exchange Commission. The panel observed that the Supreme Court set out two principles in

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

*Kokesh*: 1) whether a sanction represents a penalty turns in part on whether the wrong sought to be addressed is a wrong to the public or a wrong to an individual; and 2) a pecuniary sanction operates as a penalty only if it is sought for the purpose of punishment, and to deter others from offending.

The panel explained that, although the wrong sought to be redressed by denaturalization is a wrong to the public, revocation of citizenship is not sought for the purpose of punishment or to deter future violations. Rather, the purpose of denaturalization is to remedy a past fraud by taking back a benefit to which the alien is not entitled and thus restoring the status quo ante.

## COUNSEL

Nicolas A. Olano and Lara E. Nations, Nations Law Group, Anchorage, Alaska, for Defendant-Appellant.

Joseph F. Carilli, Jr., Trial Attorney; Joseph H. Hunt, Assistant Attorney General, William C. Peachey, Director, District Court Section; Timothy M. Belsan, Chief, National Security & Affirmative Litigation Unit; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Plaintiff-Appellee.

**OPINION**

IKUTA, Circuit Judge:

This appeal raises the question whether the revocation of citizenship on the ground that the grant of citizenship was "illegally procured or . . . procured by concealment of a material fact or by willful misrepresentation," 8 U.S.C. § 1451(a), constitutes a "penalty" for purposes of the five-year statute of limitations generally applicable to civil fines, penalties, and forfeitures, *see* 28 U.S.C. § 2462. Because the purpose of denaturalization is to remedy a past fraud by taking back a benefit to which an alien is not entitled, *see Johannessen v. United States*, 225 U.S. 227, 242–43 (1912), we conclude it is not a penalty, and the statute of limitations does not apply.

I

Phoday Phattey arrived in New York in 1995 with a non-immigrant U.S. visa and a Gambian passport issued to Foday Fatty. He submitted an application for asylum and withholding of removal under the name Foday Fatty. An immigration judge denied his application and ordered him removed, but the government was unable to locate him to execute the removal order.

Shortly after he was ordered to be removed, Phattey applied again for asylum and withholding, this time using the name Phoday Phattey. In his application, Phattey claimed he was a citizen of Mauritania who had recently arrived in Miami, Florida. He also denied having a passport or using any other names. As required by the application, he swore that the contents of the application were all "true and

correct." The second application for asylum was granted in September 1997. Phattey successfully registered as a legal permanent resident in 2004.

In April 2010, Phattey applied for citizenship under the name Phoday Phattey. He left blank the space provided to identify other names used, which indicated that he had never used another name. Phattey also falsely stated in the application that he had never lied to a government official to gain entry or admission into the United States, given false or misleading information to a government official while applying for an immigration benefit or to prevent deportation or removal, or been ordered to be removed or deported. Phattey signed this application under penalty of perjury, certifying that his answers were all "true and correct." In his interview with an immigration officer, Phattey again swore that the contents of his application were true and correct. Phattey's application for citizenship was successful. He took the Oath of Allegiance on August 20, 2010, *see* 8 C.F.R. § 337.1, and was issued a certificate of naturalization.

In November 2017, as part of a Department of Homeland Security investigation, the government learned of Phattey's immigration fraud and filed a complaint to revoke naturalization. *See* 8 U.S.C. § 1451(a).[1] The government

---

[1] 8 U.S.C. § 1451(a) states, in material part:

It shall be the duty of the United States attorneys for the respective districts, upon affidavit showing good cause therefor, to institute proceedings in any district court of the United States in the judicial district in which the naturalized citizen may reside at the time of bringing suit, for the purpose of revoking and setting aside the order admitting such person to citizenship and

later presented matching fingerprints from the asylum applications of Foday Fatty and Phoday Phattey to establish that the two are the same person.

In his answer to the government's complaint, Phattey invoked his Fifth Amendment right against self-incrimination and declined to respond to the charges against him. Nevertheless, he raised the defense that the statute of limitations to bring a denaturalization action under § 1451(a) had expired. Although § 1451(a) does not contain a statute of limitations, Phattey argued that 28 U.S.C. § 2462—a catch-all provision imposing a five-year limitations period on any action to enforce a penalty—applies to revocation proceedings.[2]

---

canceling the certificate of naturalization on the ground that such order and certificate of naturalization were illegally procured or were procured by concealment of a material fact or by willful misrepresentation . . . : *Provided*, That refusal on the part of a naturalized citizen within a period of ten years following his naturalization to testify as a witness in any proceeding before a congressional committee concerning his subversive activities . . . shall be held to constitute a ground for revocation of such person's naturalization under this subsection . . . .

[2] 28 U.S.C. § 2462 provides:

Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued if, within the same period, the offender or the property is found within the United States in order that proper service may be made thereon.

The parties both moved for summary judgment. Based on the matching fingerprints from Phattey's two asylum applications and a negative inference from Phattey's invocation of the Fifth Amendment, the district court granted the government's motion for summary judgment, concluding that Phattey and Fatty were the same person and that the government, through "clear, unequivocal, and convincing" evidence, had carried the "heavy burden," *Fedorenko v. United States*, 449 U.S. 490, 505 (1981) (citations omitted), of proving that Phattey's citizenship was "illegally procured," 8 U.S.C. § 1451(a). The district court rejected Phattey's statute of limitations defense. This appeal followed.

II

On appeal, Phattey primarily claims that the revocation of citizenship, sometimes referred to as "denaturalization," constitutes a penalty. Because 28 U.S.C. § 2462 imposes a five-year statute of limitation on actions for the enforcement of a penalty, Phattey contends that the government cannot now revoke his citizenship because more than five years have passed since he was naturalized. Therefore, he concludes, the district court erred in rejecting his statute of limitations defense.

We have jurisdiction under 28 U.S.C. § 1291. "A grant of summary judgment is reviewed *de novo*." *Suzuki Motor Corp. v. Consumers Union of U.S., Inc.*, 330 F.3d 1110, 1131 (9th Cir. 2003). In reviewing a grant of summary judgment, we must "[v]iew[] the evidence in the light most favorable to the nonmoving party" and "determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001) (en banc).

## III

Congress's authority over naturalization stems from its power to "establish an uniform Rule of Naturalization." U.S. Const. art. I, § 8, cl. 4. The Supreme Court has recognized that this constitutional authority gives Congress the power to impose "prerequisites to the acquisition of citizenship." *Fedorenko*, 449 U.S. at 506. The "[f]ailure to comply with any of these conditions renders the certificate of citizenship 'illegally procured,'" and the Court recognized that "naturalization that is unlawfully procured can be set aside." *Id.* (citations omitted).

Congress set out procedures for revoking naturalization, when procured by fraud or other unlawful acts, by enacting Section 15 of the Naturalization Act of 1906 (the 1906 Act), 34 Stat. 596, 601. *See Bindczyck v. Finucane*, 342 U.S. 76, 83 (1951). When Congress replaced the 1906 Act with the Immigration and Nationality Act of 1952 (the INA), it retained substantially all of the language of Section 15 and included it in 8 U.S.C. § 1451(a). The relevant statutory provision remains substantially the same today and permits denaturalization where naturalization was "illegally procured or . . . procured by concealment of a material fact or by willful misrepresentation." 8 U.S.C. § 1451(a). Nothing in the statute provides for the imposition of a fine, penalty, or sentence of imprisonment—only the revocation of citizenship. *See id.*

The Supreme Court has long held that the revocation of citizenship under these denaturalization provisions is not a penalty. *See Johannessen*, 225 U.S. at 242–45; *Trop v. Dulles*, 356 U.S. 86, 98–99 (1958). In the seminal case of *Johannessen*, decided shortly after the enactment of the 1906

Act, the Supreme Court considered the claims of a naturalized citizen facing cancellation of his naturalization certificate on the ground that it had been "fraudulently and illegally procured." 225 U.S. at 232. The alien argued that the denaturalization provision in Section 15, if applied retroactively, would be void as an *ex post facto* law in violation of the Constitution. *Id.* at 242. The Court rejected this argument based on the well-settled rule that the constitutional prohibition of *ex post facto* laws "is confined to laws respecting criminal punishments." *Id.* at 242 (citing U.S. Const. art 1, § 9). The Court acknowledged the prohibition does not apply to the denaturalization provision, which merely deprives the alien "of a privilege that was never rightfully his" and "*imposes no punishment* upon an alien who has previously procured a certificate of citizenship by fraud or other illegal conduct." *Id.* (emphasis added).

After the INA was enacted, a plurality of the Court reiterated that "[d]enaturalization is not imposed to penalize the alien for having falsified his application for citizenship." *Trop*, 356 U.S. at 98–99 ("Rather, [denaturalization] is imposed in the exercise of the power to make rules for the naturalization of aliens."). The Seventh Circuit has followed this guidance, holding that "denaturalization proceedings are not criminal in nature and do not inflict punishment," but rather "work[] to deprive the naturalized citizen of a privilege that should never have been bestowed." *United States v. Kairys*, 782 F.2d 1374, 1383 (7th Cir. 1986).

Phattey argues that these decisions have been superseded by the Supreme Court's subsequent decision in *Kokesh v. SEC*, 137 S. Ct. 1635 (2017). *Kokesh* considered whether § 2462 applied to disgorgement actions brought by the Securities Exchange Commission (SEC) to enforce violations

of federal securities laws. *Id.* at 1639. The Court explained that the statute of limitations imposed by § 2462 would apply in this context only "if SEC disgorgement qualifies as either a fine, penalty, or forfeiture." *Id.* at 1642. In considering whether disgorgement qualified as a penalty, the Court first defined "penalty" to mean "a punishment, whether corporal or pecuniary, imposed and enforced by the State, for a crime or offense against its laws." *Id.* (internal quotation marks and alterations omitted) (quoting *Huntington v. Attrill*, 146 U.S. 657, 667 (1892)). According to the Court, "[t]his definition gives rise to two principles." *Id.* First, "whether a sanction represents a penalty turns in part on whether the wrong sought to be redressed is a wrong to the public, or a wrong to the individual." *Id.* (internal quotation marks and citation omitted). Private causes of action are not penalties, because "[p]enal laws, strictly and properly, are those imposing punishment for an offense committed against the State." *Id.* (citation omitted). Second, "a pecuniary sanction operates as a penalty only if it is sought for the purpose of punishment, and to deter others from offending in like manner—as opposed to compensating a victim for his loss." *Id.* (citation omitted).

Applying these principles, the Supreme Court concluded that the SEC's use of disgorgement constituted a penalty under § 2462. *Id.* at 1643. Looking at its first principle, the Court reasoned that disgorgement seeks to "remedy harm to the public at large" rather than vindicate harm to a particular victim. *Id.* at 1643 (citation omitted). Turning to the second principle, the Court held that deterrence was not merely an "incidental effect" of disgorgement. *Id.* Rather, "[t]he *primary* purpose of disgorgement orders is to deter violations of the securities laws by depriving violators of their ill-gotten gains." *Id.* (emphasis added) (quoting *SEC v. Fischbach*

*Corp.*, 133 F.3d 170, 175 (2d Cir. 1997)). The Court acknowledged that a disgorgement may also serve compensatory goals, but because "disgorgement orders go beyond compensation, are intended to punish, and label defendants wrongdoers as a consequence of violating public laws, they represent a penalty and thus fall within the 5–year statute of limitations of § 2462." 137 S. Ct. at 1645 (internal quotation marks and citation omitted).

The Court rejected the government's argument that "SEC disgorgement is not punitive but 'remedial' in that it lessens the effects of a violation by restoring the status quo." *Id.* at 1644 (internal quotation marks omitted). The Court stated that "it is not clear that disgorgement, as courts have applied it in the SEC enforcement context, simply returns the defendant to the place he would have occupied had he not broken the law," because "SEC disgorgement sometimes exceeds the profits gained as a result of the violation." *Id.* at 1644. In such instances, "disgorgement does not simply restore the status quo; it leaves the defendant worse off." *Id.* at 1645. Because SEC disgorgement addressed a public wrong, and has the primary purpose of deterrence and punishment, it constitutes a penalty for purposes of the § 2462 statute of limitations. *Id.*

Under the principles set out in *Kokesh*, revocation of citizenship does not qualify as a "penalty." Although the wrong sought to be redressed by § 1451(a) is a wrong to the public, revocation of citizenship is not sought for the purpose of punishment or to deter future violations. *See Trop*, 356 U.S. at 98–99. Rather, as the Supreme Court has already concluded, the purpose of denaturalization is to remedy a past fraud by taking back a benefit to which the alien is not entitled and thus restoring the status quo ante. *See*

*Johannessen*, 225 U.S. at 242; *United States v. Koziy*, 728 F.2d 1314, 1320 (11th Cir. 1984) (holding that denaturalization "deprived [the alien] of a privilege that was never rightfully his"). Instead of imposing a punishment, denaturalization "simply returns the [alien] to the place he would have occupied had he not broken the law." *Kokesh*, 137 S. Ct. at 1644. Congress clearly knows how to impose criminal penalties for immigration fraud, *see, e.g.*, 18 U.S.C. § 1015 (mandating imprisonment for false statements under oath relating to naturalization); 18 U.S.C. § 1546 (mandating imprisonment or a fine for counterfeit immigration documents); 8 U.S.C. § 1325(c) (mandating imprisonment or a fine for marriage fraud), but chose not to do so in enacting § 1451(a).

Although § 1451(a) on its face merely restores the status quo ante, Phattey nevertheless argues that the threat of denaturalization has the effect of deterring aliens from making fraudulent representations in naturalization proceedings, and therefore constitutes a penalty. But Phattey here improperly equates the *purposes* of sanctions with their *effects*, whether intended or not. The Supreme Court has determined that a sanction is a penalty only if it is sought for the *purpose* of punishment or deterrence. *Kokesh*, 137 S. Ct. at 1642. The incidental effect of a sanction is irrelevant. *See id.* at 1643 (holding that disgorgement is a penalty where "deterrence is not simply an incidental effect of disgorgement" but rather its "primary purpose"). While Phattey may be correct that denaturalization will have a deterrent effect as a practical matter, the purpose of revocation proceedings is to revoke a wrongfully obtained benefit, rather than deterrence. *See Johannessen*, 225 U.S. at 242. Phattey further argues that denaturalization qualifies as a penalty due to its negative collateral effects on the alien's

family members whose citizenship was obtained "through the naturalization of a parent or spouse." *See* 8 U.S.C. § 1451(d). But § 1451's incidental effect on third parties, whose citizenship was necessarily also obtained as a result of fraud, similarly serves to restore the status quo ante, rather than to act as a deterrent.

Because denaturalization proceedings do not constitute a penalty for purposes of 28 U.S.C. § 2462, that statute does not provide Phattey a statute-of-limitations defense. Accordingly, the district court did not err in entering summary judgment in favor of the government.

**AFFIRMED.**