NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

JUL 2 2020

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| COUNTER WRAPS INTERNATIONAL, INC., doing business as DC Media and Marketing, | No.    19-15712 |
| | D.C. No. 2:16-cv-02924-JCM-CWH |
| Plaintiff-Appellant, | |
| v. | MEMORANDUM* |
| DIAGEO NORTH AMERICA, INC.; DIAGEO AMERICAS, INC., | |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the District of Nevada
James C. Mahan, District Judge, Presiding

Submitted May 13, 2020**
Portland, Oregon

Before:  BYBEE and VANDYKE, Circuit Judges, and CHHABRIA,*** District Judge.

---

*        This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

**        The panel unanimously concludes this case is suitable for decision without oral argument.  See Fed. R. App. P. 34(a)(2).

***        The Honorable Vince Chhabria, United States District Judge for the Northern District of California, sitting by designation.

Counter Wraps International, Inc. ("CWI") appeals the district court's grant of summary judgment dismissing its breach of contract and fraud claims. The district court concluded that both claims were barred by the relevant statute of limitations. We have jurisdiction under 28 U.S.C. § 1291. We affirm in part and reverse in part.

CWI agreed to make counter wraps for Diageo's[1] sparkling alcoholic drink, Nuvo. CWI alleges that the parties executed a written contract under which Diageo would pay CWI $7.5 million for 5,000 wraps (the "Nuvo Agreement"). Diageo ultimately requested fewer wraps and paid CWI $3.38 million for the reduced number of wraps. CWI contends that Diageo first fraudulently induced CWI to enter into a contract, and then breached the contract. Diageo argues that (1) it was never a party to the so-called Nuvo Agreement, (2) the variable-quantity terms attached to Diageo's later-signed Purchase Order ("PO") controlled its agreement with CWI, and (3) even if the parties started with a fixed-quantity contract, the parties subsequently modified the contract by agreement, so Diageo never breached the agreement as modified.

We review de novo a district court's grant of summary judgment and "view the evidence in the light most favorable to the nonmoving party." *United States v. Phattey*, 943 F.3d 1277, 1280 (9th Cir. 2019) (internal quotation marks omitted;

___

[1] We collectively refer to the Defendants as "Diageo."

alterations adopted). We must also determine "whether the district court correctly applied the relevant substantive law"—here, Nevada law. *Id*. (quoting *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001) (en banc)).

The dispositive issue for the breach of contract claim is whether the parties' agreement was written or oral. If oral, as the district court concluded, Nevada law imposes a four-year statute of limitations that bars CWI's breach of contract claims. Nev. Rev. Stat. § 11.190(2)(c). On the other hand, if the parties' agreement was written, Nevada law imposes a six-year statute of limitations, and CWI's contract claim is not time-barred. Nev. Rev. Stat. § 11.190(1)(b). The district court determined that the agreement between the parties was oral in nature and thus time-barred under Nevada's four-year statute of limitations for oral contracts. But that was error.

Under Nevada law, "a strict construction should not be applied by the court in determining what does and what does not constitute a 'contract in writing'" under Section 11.190(1)(b). *El Ranco, Inc. v. N.Y. Meat & Provision Co.*, 493 P.2d 1318, 1321 (Nev. 1972), *disagreed with on other grounds by State v. Am. Bankers Ins. Co.*, 782 P.2d 1316 (Nev. 1989). "[A]ll that is required is that there be a writing which fairly imports the obligation to pay." *Id.* at 1321–22 (concluding that sales receipts and the parties' course of dealing were sufficient to meet Nevada's "contract in writing" requirement). Here, while the parties dispute *which* emails and documents

3

controlled their agreement, the evidence produced at summary judgment makes clear that the parties' agreement was based on written emails and documents containing prices, amounts, and terms. Regardless of whether the Nuvo Agreement controls (as CWI argues) or the PO terms control (as Diageo argues) or the parties' contract was modified by subsequent correspondence (as Diageo also argues), the evidence shows that one or more writings existed that governed various terms of the parties' agreement, and CWI's breach of contract claim is therefore not time-barred under Nevada Revised Statute § 11.190(1)(b). The question of *which* writing(s) control is a disputed issue of material fact that should be decided by the fact-finder, not pretermitted at the summary judgment stage.

To defeat summary judgment on the fraud in the inducement claim, CWI must establish the following elements by clear and convincing evidence at trial:

> (1) a false representation made by [Diageo], (2) [Diageo's] knowledge or belief that the representation was false (or knowledge that it had an insufficient basis for making the representation), (3) [Diageo's] intention to therewith induce [CWI] to consent to the contract's formation, (4) [CWI's] justifiable reliance upon the misrepresentation, and (5) damage to [CWI] resulting from such reliance.

*J.A. Jones Constr. Co. v. Lehrer McGovern Bovis, Inc.*, 89 P.3d 1009, 1018 (Nev. 2004). "Fraud is never presumed; it must be clearly and satisfactorily proved." *Havas v. Alger*, 461 P.2d 857, 860 (Nev. 1969). To prevent summary judgment, CWI must show that the evidence "raises a genuine issue concerning the existence of" fraud and "come forward with specific facts showing that there is a *genuine issue*

4

*for trial.*"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (emphasis in original; quotation marks omitted) (quoting Fed. R. Civ. P. 56(e)).  "Where the record taken as a whole could not lead a rational trier of fact to find for [CWI], there is no genuine issue for trial."  *Id*. at 587 (internal citation and quotation marks omitted).

With respect to the second element, CWI provides three reasons why Diageo's guarantees were knowingly "false when made."  First, CWI argues that "Diageo has an (undisclosed) internal 'optionality' policy affording itself the unilateral right to walk away from its agreements with its vendors for any reason at any time."  Second, Diageo "believes it can and will unilaterally modify or cancel vendor commitments based on brand performance."  Third, Diageo "determined its Nuvo budget would depend upon sales—if the brand faltered, Diageo was not committed to direct other available funds to honor the parties' agreement."

Even assuming these three assertions are true, they do not demonstrate that Diageo did not intend to uphold its end of the bargain when the agreement was struck.  *See Tallman v. First Nat'l Bank of Nev.*, 208 P.2d 302, 307 (Nev. 1949) ("[T]here is no inference of a fraudulent intent not to perform from the mere fact that a promise made is subsequently not performed.").  Instead, the assertions demonstrate that Diageo was operating under the assumption that the optionality provision in its PO applied to the agreement with CWI.  If Diageo incorrectly

5

believed that its optionality provision applied, then Diageo was mistaken and only misled itself. This mistaken belief may have resulted in later breach of the contract because Diageo misunderstood its terms, but later nonperformance is not evidence of fraud. *See id.* If, on the other hand, Diageo was correct and its optionality provision *does* apply to the parties' agreement, then CWI cannot prove that Diageo committed fraud because Diageo could not have misled CWI about something that was, in fact, true. Either way, the three assertions put forth by CWI do not show that Diageo knew its guarantees under the agreement were false when made. CWI's fraud claim fails because CWI has not pointed to any evidence supporting the second element of fraud in the inducement. Thus, even assuming CWI can establish the remaining elements, its fraud claim cannot survive summary judgment.[2]

The district court's dismissal of the breach of contract claim is **REVERSED** and **REMANDED**. A trier of fact should determine which writing(s) control, whether the parties subsequently modified their original agreement, and whether a breach occurred.

The district court's dismissal of the fraud claim is **AFFIRMED**.

---

[2] CWI also asserts fraudulent concealment on appeal. But CWI did not allege fraudulent concealment at the district court; in fact, the words "conceal" and "concealment" do not appear in CWI's First Amended Complaint. We decline CWI's invitation to consider this argument in the first instance and in the absence of exceptional circumstances. *See Baccei v. United States*, 632 F.3d 1140, 1149 (9th Cir. 2011) ("Absent exceptional circumstances, we generally will not consider arguments raised for the first time on appeal, although we have discretion to do so.").

6